Mr. Chief Justice Warren
 

 delivered the opinion of the Court.
 

 Presented for decision in this case is the validity, under the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, of the apportionment of seats in the legislature of the Commonwealth of Virginia.
 

 I.
 

 Plaintiffs below, residents, taxpayers, and qualified voters of Arlington and Fairfax Counties, filed a complaint on April 9, 1962, in the United States District Court for the Eastern District of Virginia, in their own behalf and on behalf of all voters in Virginia similarly situated, challenging the apportionment of the Virginia General Assembly. Defendants, sued in their representative capacities, were various officials charged with duties in connection with state elections. ' Plaintiffs claimed rights under, provisions of the Civil Rights Act, 42 U. S. C. §§ 1983, 1988, and asserted jurisdiction under 28 U. S. C. § 1343 (3).
 

 The complaint alleged that the present statutory provisions apportioning seats in the Virginia Legislature, as amended- in 1962, result in invidious discrimination
 
 *813
 
 against plaintiffs and “all other voters of the State Senatorial and House districts” in which they reside, since voters in Arlington and Fairfax Counties are given substantially less representation than voters living in other parts of the State. Plaintiffs asserted that the discrimination was violative of the Fourteenth Amendment as well as the Virginia Constitution, and contended that the requirements of the Equal Protection Clause of the Federal Constitution, and of the Virginia Constitution, could be met only by a redistribution of legislative representation among the counties and independent cities of the State “substantially in proportion to their respective populations.” Plaintiffs asserted that they “possess an inherent right to vote for members of the General Assembly . . . and to cast votes that are equally effective with the votes of every other citizen” of Virginia, and that this right was being diluted and effectively denied by the discriminatory apportionment of seats in both houses of the Virginia Legislature under the statutory provisions attacked as being unconstitutional. Plaintiffs contended that the alleged inequalities and distortions in the allocation of legislative seats prevented the Virginia Legislature from “being a body representative of the people of the Commonwealth,” and resulted in a minority of the people of Virginia controlling the General Assembly.
 

 The complaint requested the convening of a three-judge District Court. With respect to relief, plaintiffs sought a declaratory judgment that the statutory scheme of legislative apportionment in Virginia, prior as well as subsequent to the 1962 amendments, contravenes the Equal Protection Clause of the Fourteenth Amendment and is thus unconstitutional and void. Plaintiffs also requested the issuance of a prohibitory injunction restraining defendants from performing their official duties relating to the election of members of the General Assembly pursuant to the present statutory provisions. Plain
 
 *814
 
 tiffs further sought a mandatory injunction requiring defendants to conduct the next primary and general elections for legislators on an at-large basis throughout the State.
 

 A three-judge District Court was promptly convened. Residents and voters of the City of Norfolk were permitted to intervene as plaintiffs against the original defendants and against certain additional defendants, election officials in Norfolk. On June 20, 1962, all of the plaintiffs obtained leave to amend the complaint by adding an additional prayer for relief which requested that, unless the General Assembly “promptly and fairly” reapportioned the legislative districts, the Court should reapportion the districts by its own order so as to accord the parties and others similarly situated “fair and proportionate” representation in the Virginia Legislature.
 

 Evidence presented to the District Court b.y plaintiffs included basic figures showing the populations of the various districts from which senators and delegates are elected and the number of seats assigned to each. From that data various statistical comparisons were derived. Since the 1962 reapportionment measures were enacted only two days before the complaint was filed and made only small changes in the statutory provisions relating to legislative apportionment, which had been last amended in 1968, the evidence submitted covered both the present and the last previous apportionments. Defendants introduced various exhibits showing the numbers of military and military-related personnel in the City of Norfolk and in Arlington and Fairfax Counties, disparities from population-based representation among the various States in the Federal Electoral College, and results of a comparative study of state legislative apportionment which show Virginia as ranking eighth among the States in population-based legislative representativeness, as reapportioned in 1962.
 

 
 *815
 
 On November 28, 1962, the District Court, with one judge dissenting, sustained plaintiffs’ claim and entered an interlocutory order holding the apportionment of the Virginia Legislature violative of the Federal Constitution. 213 F. Supp. 577. The Court refused to dismiss the case or stay its action on the ground, asserted by defendants, that plaintiffs should be required first to procure the views of the state courts on the validity of the apportionment scheme. Instead, it held that, since neither the 1962 legislation nor the relevant state constitutional provisions were ambiguous, no question of state law necessitating abstention by the Federal District Court was presented. In applying the Equal Protection Clause to the Virginia apportionment scheme, the Court stated that, although population is the predominant consideration, other factors may be of some relevance “in assaying the justness of the apportionment.” Stating that the Federal Constitution requires a state legislative apportionment to “accord the citizens of the State substantially equal representation,” the Court held that the inequalities found in the statistical information relating to the population of the State’s various legislative districts, if unexplained, sufficiently showed an “invidious discrimination” against plaintiffs and those similarly situated. The Court rejected any possibility of different bases of representation being applicable in the two houses of the Virginia Legislature, stating that, in Virginia, each house has “a direct, indeed the same, relation to the people,” and that the principal present-day justification for bicameralism in state legislatures is to insure against precipitate action by imposing greater deliberation upon proposed legislation. Because of the gross inequalities in representation among various districts in both houses of the Virginia Legislature, the Court put the burden of explanation on defendants, and found that they had failed to meet it. Consequently, the Court concluded that the discrimina
 
 *816
 
 tion against Arlington and Fairfax Counties and the City of Norfolk was a grave and “constitutionally impermissible” deprivation, violative of the Equal Protection Clause of the Fourteenth Amendment.
 

 With respect to relief, the Court stated that, while it would have preferred that the General Assembly itself correct the unconstitutionality of the 1962 apportionment legislation, it would not defer deciding the case until after the next regular session of the Virginia Legislature in January 1964, because senators elected in November 1963 would hold office until 1968 and delegates elected in 1963 would serve until 1966. Deferring action would thus result in unreasonable delay in correcting the injustices in the apportionment of the Senate and the House of Delegates, concluded the Court.
 

 The District Court’s interlocutory order declared that the 1962 apportionment violated the Equal Protection Clause and accordingly was void and of no effect. It also restrained and enjoined defendants from proceeding with the conducting of elections under the 1962 legislation, but stayed the operation of the injunction until January 31, 1963, so that either the General Assembly could act or an appeal could be taken to this Court, provided that, if neither of these steps was taken, plaintiffs might apply to the District Court for further relief. Finally, the court below retained jurisdiction of the case for the entry of such orders as might be required.
 

 An appeal to this Court was timely noted by defendants. On application by appellants, The Chief Justice, on December 15, 1962, granted a stay of the District Court’s injunction pending final disposition of the ease by this Court'. Because of this stay, the November 1963 election of members of the Virginia Legislature was conducted under the existing statutory provisions. We noted probable jurisdiction on June 10, 1963. 374 U. S. 803.
 

 
 *817
 
 II.
 

 The Virginia Constitution provides for a Senate of not more than 40 nor less than 33 members, in Art. IV, § 41, and for a House of Delegates of not more than 100 nor less than 90 seats, in Art. IV, §.42. Senators are elected quadrennially and delegates biennially. At all relevant times, state statutes have fixed the number of senators at 40 and the number of delegates at 100. Pursuant to the state constitutional requirement of legislative reapportionment at least decenially, contained in Art. IV, § 43, the General Assembly has reapportioned senatorial and House seats in 1932, 1942, and 1952, as well as in 1962, and in 1958 the apportionment statutes were amended.
 
 [1]
 
 The Virginia Constitution contains no ex
 
 *818
 
 press standards, however, for the apportionment of legislative representation, and leaves the task of establishing districts solely up to the discretion of the legislature.
 

 With respect to political subdivisions, Virginia has 98 counties and 32 independent cities. Despite the absence of any specific provisions in the State Constitution, population has generally been traditionally regarded as the most important factor for legislative consideration in reapportioning and redistricting. Because cities and counties have consistently not been split or divided for' purposes of legislative representation, multimember districts have been utilized for cities and counties whose populations entitle them to more than a single representative, resulting in there always being less than 100 delegate districts and less than 40 senatorial districts. And, because of a tradition of respecting the integrity of the boundaries of cities and counties in drawing district lines, districts have been constructed only of combinations of counties and cities and not by pieces of them. This has resulted in the periodic utilization of floterial districts
 
 [2]
 
 
 *819
 
 where contiguous cities or counties cannot be combined to yield population totals reasonably close to a population ratio figure determined by dividing the State’s total population by the number of seats in the particular legislative body. Various other factors, in addition to population, which have historically been considered by Virginia Legislatures in enacting apportionment statutes include compactness and contiguity of territory in forming districts, geographic and topographic features, and community of interests among people in various districts.
 

 Section 24-14 of the Virginia Code, as amended in 1962, provides for the apportionment of the Virginia Senate, and divides the State into 36 senatorial districts for the allocation of the 40 seats in that body. With a total state population of 3,966,949, according to the 1960 census, and 40 Senate seats, the ideal ratio would be one senator for each 99,174 persons. Under the 1962 statute, however, Arlington County is given but one senator for its 163,401 persons, only .61 of the representation to which it would be entitled on a strict population basis. The City of Norfolk has only .65 of its ideal share of senatorial representation, with two senators for a population of 305,872. And Fairfax County (including the cities of Fairfax and Falls Church), with two senators for 285,194 people, has but .70 of its ideal representation in the Virginia Senate. In comparison, the smallest senatorial district, with respect to population, has only 61,730, and the next smallest 63,703.
 
 [3]
 
 Thus, the maximum popula
 
 *820
 
 tion-variance ratio between the most populous and least populous senatorial districts is 2.65-to-l. Under the 1962 senatorial apportionment, applying 1960 population figures, approximately 41.1% of the State’s total population reside in districts electing a majority of the members of that body.
 
 [4]
 

 Apportionment of seats in the Virginia House of Delegates is provided for in § 24-12 of the Virginia Code, as amended in 1962, which creates 70 House districts and distributes the .100 House seats among them. Dividing the State’s total 1960 population by 100 results in an ideal ratio of one delegate for each 39,669 persons. Fair-fax County, with a population of 285,194, is allocated only three House seats under the 1962 apportionment provisions, however, thus being given only .42 of its ideal representation. While the average population per delegate in Fairfax County is 95,064, Wythe County, with only 21,975 persons, and Shenandoah County, with a population of only 21,825, are each given one seat in the Virginia House.
 
 [5]
 
 The maximum population-variance
 
 *821
 
 ratio, between the most populous and least populous House districts, is thus 4.36-to-1. The City of Norfolk, with 305,872 people, is given only six House seats, and Arlington County, with a population of 163,401, is allocated only three. Under the 1962 reapportionment of the House of Delegates, 40.5% of the State’s population live in districts electing a majority of the House members. Twenty-seven House districts have more than three times the representation of the people of Fairfax County, 12 districts have twice the representation of Arlington County, and six, twice that of Norfolk.
 

 No adequate political remedy to obtain legislative reapportionment appears to exist in Virginia.
 
 [6]
 
 No initiative procedure is provided for under Virginia law. Amendment of the State Constitution or the calling of a constitutional convention initially requires the vote of a majority of both houses of the Virginia General Assembly.
 
 [7]
 
 Only after such legislative approval is obtained is such a measure submitted to the people for a referendum vote. Legislative apportionment questions do not appear to have been traditionally regarded as non justiciable by Virginia state courts, however,
 
 [8]
 
 and appellees could
 
 *822
 
 possibly have sought and obtained relief in a state court as well as in a Federal District Court.
 
 [9]
 

 III.
 

 In
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 533, decided also this date, we held that the Equal Protection Clause requires that seats in both houses of a bicameral state legislature must be apportioned substantially on a population basis. Neither of the houses of the Virginia General Assembly, under the 1962 statutory provisions here attacked, is apportioned sufficiently on a population basis to be constitutionally sustainable. Accordingly, we hold that the District Court properly found the Virginia legislative apportionment invalid.
 

 Appellants' contention that the court below should have abstained so as to permit a state court to decide the questions of state law involved in this litigation is without merit. Where a federal court's jurisdiction is properly invoked, and the relevant state constitutional and statutory provisions are plain and unambiguous, there is no necessity for the federal court to abstain pending determination of the state law questions in a state court.
 
 McNeese
 
 v.
 
 Board of Education,
 
 373 U. S. 668. This is especially so where, as here, no state proceeding had been
 
 *823
 
 instituted or was pending when the District Court’s jurisdiction was invoked. We conclude that the court below did not err in refusing to dismiss the proceeding or stay its action pending recourse to the state courts.
 

 Undoubtedly, the situation existing in Virginia, with respect to legislative apportionment, differs not insignificantly from that in Alabama. In contrast to Alabama, in Virginia the legislature has consistently reapportioned itself decennially as required by the State Constitution. Nevertheless, state legislative malapportionment, whether resulting from prolonged legislative inaction or from failure to comply sufficiently with federal constitutional requisites, although reapportionment is accomplished periodically, falls equally within the proscription of the Equal Protection Clause.
 

 We reject appellants’ argument that the underrepresen-tation of Arlington, Fairfax and Norfolk is constitutionally justifiable since it allegedly resulted in part from the fact that those areas contain large numbers of military and military-related personnel. Discrimination against a class of individuals, merely because of the nature of their employment, without more being shown, is constitutionally impermissible. Additionally, no showing was made that the Virginia Legislature in fact took, such a factor into account in allocating legislative representation.
 
 [10]
 
 And state policy, as evidenced by Virginia’s election laws, actually favors and fosters voting by military and military-related personnel.
 
 [11]
 
 Furthermore, even if
 
 *824
 
 such persons were to be excluded in determining the populations of the various legislative districts, the discrimination against the disfavored areas would hardly be satisfactorily explained, because, after deducting military and military-related personnel, the maximum population-variance ratios would still be 2.22-to-1 in the Senate and 3.53-to-l in the House.
 

 We also reject appellants’ claim that the Virginia apportionment is sustainable as involving an attempt to balance urban and rural power in the legislature. Not only does this explanation lack legal merit, but it also fails to conform to the facts. Some Virginia urban areas, such as Richmond, by comparison with Arlington, Fairfax and Norfolk, appear to be quite adequately represented in the General Assembly. And, for the reasons stated in
 
 Reynolds,
 

 [12]
 

 in rejecting the so-called federal analogy, and in
 
 Gray
 
 v.
 
 Sanders,
 
 372 U. S. 368, 378, appellants’ reliance on an asserted analogy to the deviations from population in the Federal Electoral College is misplaced. The fact that the maximum variances in the populations of various state legislative districts are less than the extreme deviations from a population basis in the composition of the Federal Electoral College fails to provide a constitutionally cognizable basis for sustaining a state apportionment scheme under the Equal Protection Clause.
 

 We find it unnecessary and inappropriate to discuss questions relating to remedies at the present time.
 
 [13]
 
 
 *825
 
 Since the next election of Virginia legislators will not occur until 1965, ample time remains for the Virginia Legislature to enact a constitutionally valid reapportionment scheme for purposes of that election.. After the District Court has provided the Virginia Legislature with an adequate opportunity to enact a valid plan, it can then proceed, should it become necessary, to grant relief under equitable principles to insure that no further elections are held under an unconstitutional scheme. Since the District Court stated that it was retaining jurisdiction and that plaintiffs could seek further appropriate relief, the court below presumably intends to take further action should the Virginia Legislature fail to act promptly in remedying the constitutional defects in the State’s legislative apportionment plan. We therefore affirm the judgment of the District Court on the merits of this litigation, and remand the case for further proceedings consistent with the views stated here and in our opinion in
 
 Reynolds
 
 v.
 
 Sims.
 

 It is so ordered.
 

 Mr. Justice Clark concurs in the affirmance for the reasons stated in his concurring opinion in
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 587, decided this date.
 

 [For dissenting opinion of Mr. Justice Harlan, see
 
 ante,
 
 p. 589.]
 

 Mr. Justice Stewart.
 

 In this case, the District Court.recognized that “population is not . . . the sole or definitive measure of districts when taken by the Equal Protection Clause.” 213 F. Supp., at 584. In reaching its decision the. court made clear that it did not “intend to say that there cannot be wide differences of population in districts if a sound reason can be advanced for the discrepancies.”
 
 Id.,
 
 at
 
 *826
 
 585. The District Court, however, could find “no rational basis for the disfavoring of Arlington, Fairfax and Norfolk.”
 
 Ibid.
 
 In my opinion the appellants have failed to show that the trial court erred in reaching this conclusion. Accordingly, in keeping with the view expressed in my dissenting opinion in
 
 Lucas
 
 v.
 
 Forty-Fourth General Assembly of Colorado, post,
 
 p. 744, I would affirm the District Court’s judgment holding that to the extent a state legislative apportionment plan is conclusively shown to have no rational basis, such a plan violates the Equal Protection Clause.
 

 [1]
 

 Reapportionment in 1952 was accomplished only after the Governor convened a special session of the Virginia Legislature for that purpose, since the legislature had adjourned without enacting any statutes reallocating representation. In anticipation of the constitutional mandate to reapportion in 1962, the Virginia Governor, in January 1961, appointed a commission on redistricting. In doing its work, this commission employed the assistance of the Bureau of Public Administration of the University of Virginia. Suggesting that Senate and House districts should be, as nearly as practicable, equal in population, the Bureau submitted two alternative plans for the apportionment of the House and three alternative plans for the apportionment of Senate seats. These plans all followed the various criteria traditionally considered in previous apportionments, and complied with the constitutionally prescribed size limitations on both of the houses. In late 1961, the commission filed its report recommending a redistricting plan different from any of the plans submitted by the Bureau. Its plan, based more on political compromise than any of the Bureau’s suggested plans, deviated further from population-based representation than any of the Bureau’s proposals. At its 1962 regular session, the Virginia General Assembly completely disregarded both the commission report and the plans prepared by the Bureau, and adopted apportionment schemes of its own for each house, in practical effect making only minimal changes in the existing statutory provisions. These enactments, of course, are the ones principally complained of by appellees in this litigation.
 

 [2]
 

 The term “floterial district” is used to refer to a legislative district which includes within its boundaries several separate districts or political subdivisions which independently would not be entitled to additional representation but whose conglomerate population entitles the entire area to another seat in the particular legislative body being apportioned. See
 
 Baker
 
 v. Carr, 369 U. S. 186, 256 (Clark, J., concurring). As an example, the City of Lynchburg, with a 1960 population of 54,790, is itself allocated one seat in the Virginia House of Delegates under the 1962 apportionment plan. Amherst County, with a population of only 22,953, is not given any independent representation in the Virginia House. But the City of Lynchburg and Amherst County are combined in a floterial district with a total population of 77,743. Presumably, it was felt that Lynchburg was entitled to some additional representation in the Virginia House, since its population significantly exceeded the ideal House district size of 36,669. However, since Lynchburg’s population did not approach twice that figure, it was apparently decided that Lynchburg was not entitled, by itself, to an added seat. Adjacent Amherst County, with a population substantially smaller
 
 *819
 
 than the ideal district size, was presumably felt not to be entitled to a separate House seat. The solution was the creation of a floterial district comprising the two political subdivisions, thereby according Lynchburg additional representation and giving Amherst County a voice in the Virginia House, without having to create separate additional districts for each of the two political subdivisions.
 

 [3]
 

 In illustrating the disparities from population-based representation in the apportionment of Senate seats, the District Court included
 
 *820
 
 in its opinion a chart showing the composition (by counties and cities) and populations of, and the number of senators allotted to, various senatorial districts, and comparing these figures with the senatorial representation given Arlington, Fairfax and Norfolk. 213 F. Supp., at 581-582.
 

 [4]
 

 Appellees have pointed out, however, that, since seats in the Virginia Legislature are reapportioned decennially, and since the allegedly underrepresented districts are those whose populations are increasing more rapidly than the allegedly overrepresented ones, the disparities from population-based representation, in both houses of the Virginia Legislature, will continually increase throughout the 10-year period until the next reapportionment.
 

 [5]
 

 In discussing deviations from population-based representation in the allocation of seats in the House of Delegates, the District Court included, as part of its opinion, a chart showing the populations of and the number of seats given to certain House districts, and comparing these figures with the House representation accorded Arlington, Fair-fax and Norfolk. 213 F. Supp., at 582-584.
 

 [6]
 

 For a discussion of the lack of federal constitutional significance of the presence or absence of an available political remedy, see
 
 Lucas
 
 v.
 
 Forty-Fourth General Assembly of Colorado, post,
 
 pp. 736-737, decided also this date.
 

 [7]
 

 Va. Const., Art. XV, §§ 196, 197.
 

 [8]
 

 In
 
 Brown
 
 v.
 
 Saunders,
 
 159 Va. 28, 166 S. E. 105 (1932), the Supreme Court of Appeals of Virginia held that a congressional dis-tricting statute enacted by the Virginia Legislature was invalid since it conflicted with Art. IV, § 55, of the State Constitution, which requires congressional districts to have “as nearly as practicable, an equal number of inhabitants.” Of course, involved in that case was a specific state constitutional requirement relating to congressional districting, whereas no such detailed state requirements exist with respect to apportionment of seats in the Virginia Legislatura. Appellants have argued, however, that this decision indicates that Virginia
 
 *822
 
 courts will also adjudicate questions relating to the validity of the State's legislative apportionment scheme under the provisions of the Federal Constitution.
 

 [9]
 

 However, in
 
 Tyler
 
 v.
 
 Davis,
 
 a case involving a suit instituted on March 26, 1963, almost four months after the District Court’s decision in the instant case, the Circuit Court of the City of Richmond dismissed, on the merits, an action challenging the apportionment of seats in the Virginia Legislature. Although the state court found that it had jurisdiction and that the questions raised were justiciable in nature, it dismissed the complaint on the ground that plaintiffs had failed to show that the scheme for apportioning seats in the Virginia Legislature was an invidiously discriminatory one violative 'of the Equal Protection Clause.
 

 [10]
 

 See 213 F. Supp., at 584.
 

 [11]
 

 Virginia’s election laws enable persons in the armed forces to vote without registration or payment of poll tax. Va. Code Ann., 1950 (Repl. Vol. 1964) §24r-23.1. While the literal language of this provision grants the privilege to those “in active service ... in time of war,” the Virginia State Board of Electors is applying it currently. Although the mere stationing of military personnel in the State does not give them residence, Virginia election officials interpret the appli
 
 *824
 
 cable statutory provisions to mean that residence for military personnel is determined in the same manner as for all other citizens. Military personnel and members of their families who have been residents of Virginia for a year, residents of a county, city or town for six months, and residents of a precinct for 30 days are entitled to vote. Military personnel are not included in the categories of persons disabled from voting. Va. Code Ann., 1950 (Repl. Vol. 1964) § 24-18.
 

 [12]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 pp. 571-576.
 

 [13]
 

 See
 
 id.,
 
 at 585.