**LEAGUE OF NEBRASKA MUNICIPALITIES, a non-profit Nebraska corporation, et al., Plaintiffs,**

**v.**

**Frank O. MARSH, as Secretary of State of the State of Nebraska and as Member of the State Board of Education Canvassers of the State of Nebraska, et al., Defendants,**

**Nebraska State American Federation of Labor and Congress of Industrial Organizations, et al., Intervenors.**

**Civ. No. 551 L.**

United States District Court
D. Nebraska.

July 17, 1964.

Lloyd E. Chapman, Ralph D. Nelson, Lincoln, Neb., and Herbert M. Fitle, Omaha, Neb., for plaintiffs.

Robert A. Nelson, Sp. Asst. Atty. Gen. of Nebraska, and Richard H. Williams, Asst. Atty. Gen. of Nebraska, for defendants.

**412**

August Ross and Robert E. O'Connor, Omaha, Neb., for intervenors.

Before JOHNSEN, Circuit Judge, and ROBINSON and VAN PELT, District Judges.

VAN PELT, District Judge.

The issues in this case have been stated in two previous opinions (see D.C., 209 F.Supp. 189 and the unpublished opinion of March 3, 1964). Except as necessary to the decision herein a restatement of the·issues is uncalled for.

█ The guide lines referred to in the unpublished opinion, supra, have been recently furnished by the United States Supreme Court. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (Ala.); WMCA Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (N.Y.) ; Lucas v. The Forty-Fourth General Assembly, 377 U. S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (Colo.); The Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (Md.); Davis, Secretary v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L. Ed.2d 609 (Va.); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (Del.), all decided by the United States Supreme Court on June 15, 1964; and Marshall v. Hare, 84 S.Ct. 1912, 12 L.Ed. 2d 1036, per curiam and order of reversal entered by the United States Supreme Court on June 22, 1964 (Mich.). Upon this authority the court holds that the portion of the 1962 amendment of Article III, Section 5 of the Constitution of the State of Nebraska providing that not less than 20% nor more than 30% weight shall be given to area in the creation of Unicameral legislative districts fails to comport with the requirements of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

We next turn to the effect of Legislative Bills Nos. 629 and 796 enacted by the 1963 Legislature, Laws 1963, cc. 22, 23. It is clear that these legislative enactments attempted to give weight to area under the constitutional amendment, supra.

L.B. 629 by section 1 amended Section 5-103, R.R.S.1943, by striking the words "forty three" and inserting in lieu thereof the words "forty nine" thereby increasing the Unicameral membership. It repealed Section 5-104 of the statutes above described which had prescribed boundaries for the 43 districts, and by section 2 of the bill proceeded to divide the State into 49 legislative districts.

L.B. 796 amended section 2 only of L.B. 629. The increase in membership from 43 to 49 is untouched by L.B. 796. The boundaries of certain districts were changed from that set forth in L.B. 629. These amendments were necessary for accuracy and to avoid omission of territory but do not affect the basic issue before us.

It is the contention of the Attorney General of Nebraska who represents the defendants that notwithstanding the motive of the legislators, and their attempt to give weight to area, if in fact the Unicameral districts as created do not cause invidious discrimination and do not in a substantial fashion dilute an individual's right to vote for state legislators when compared with votes of citizens living in other parts of the State, that the legislative enactments should stand. In fact the Attorney General urges that in the creation of the 49 districts invidious discrimination does not exist and that the individual's right to vote for legislators is not diluted in a substantial fashion in any section of the State.

█ L.B. 796 provides Nebraska's most populous county, Douglas, in which Omaha is located, with 10 legislators rather than the 7 which Douglas County had in the 43 member Unicameral, and provides Nebraska's second most populous county, Lancaster, in which Lincoln is located, with 5 legislators instead of 3. It increases by 1 the representation of the remainder of the State. The result of the apportionment under L.B. 796 is that Douglas and Lancaster

Counties, with 37.8% of the total population of the State, are given 30.6% of the legislators.

It is provable mathematically, and is urged by counsel for intervenors, that Douglas County, in a Unicameral of 49 members, should have at least 2 more members than are provided in Legislative Bills Nos. 629 and 796 if population is the sole factor considered.

It follows, if Douglas County should receive 2 additional legislators, that other parts of the State will lose 2, and that a realignment of the boundaries of many if not all of the legislative districts of Nebraska will be necessary.

It is to be emphasized that we are here concerned only with the dilution, if any, of voting strength within the various Unicameral legislative districts, and if such is found whether it is substantial in its effect upon the individual voter within those districts. The discussion of counties is germane only in that it is an effective way, without unduly extending this opinion with tables and figures, of pointing up the contention that the legislative districts as created in L.B. 796 are not based upon a substantial equality of population and that the voting rights of the individual plaintiffs and intervenors have been impinged.

Douglas County's shortage in representation is but one facet of the problem, however. The smallest district under L.B. 796 is district # 43 with a population of 21,703 (see exhibit 18). The largest district is in Douglas County, being # 11, with a population of 36,393 (see exhibit 20).

On the basis of population, comparing the largest district in the State with the smallest district, if district # 43 is given a legislative voting strength of 1, then district # 11 should have a voting strength of 1.67. If we make the computation based upon the average population for each of 49 districts, district # 43 would have a voting strength of .75 and district # 11 a voting strength of 1.26. While the greatest disparity to be found is by comparing districts # 43 and # 11 other districts in counties other than Douglas could be used and substantial dilution in voting strength would appear. For example, district # 16 composed of Cuming and Colfax counties has a population of 22,030 while the adjoining district on the south and east, # 15, composed of Dodge County alone, has a population of 32,471. Adjacent districts # 35 and # 41 point up the same dilution of voting strength, and district # 1 in the southeast corner of Nebraska with a population of 34,639 when compared with district # 46 in the southwest corner of Nebraska, with a population of 23,135 or compared with district # 49 in the northwest corner of Nebraska, with a population of 23,799, help to make obvious the effect of the 20% area formula.

Exhibit 19 shows that 25 Unicameral districts with a total population of 620,022 could control the Unicameral legislature. The remaining 24 districts with a total population of 791,308 could be in the minority. In other words, representatives of 44% of the population can under the districts created under L.B. 796 out-vote the representatives of the remaining 56% of the population in legislative matters.

It is thus evident that L.B. 796 does not provide for a substantially equally effective voice for voters throughout the State in the election of members of the Unicameral. It is evident that it dilutes in a substantial fashion the individual right of voters in a number of counties and districts when compared with the vote of citizens living in districts in other parts of the State. See exhibit 18. We find that the "substantial equality of population among the various districts" which is the permissible standard set up by Reynolds v. Sims, supra, does not exist under L.B. 796. The apportionment of legislators as set forth in L.B. 796 does not comport with the Equal Protection Clause of the Fourteenth Amendment.

We should consider next how this can be remedied. Nebraska held its primary election on May 12. Filings had previously been made by one or more candi-

dates in each of the 49 Unicameral districts provided for under L.B. 796. Nominations have now been made in each district.

A special primary election in the 2144 election precincts in Nebraska would be highly expensive and would cost upward of $200,000 or $300,000. The time for campaigning in the newly created districts would be severely curtailed even if the legislature was to meet within the next week or ten days and pass a new redistricting law. These considerations all influence us in determining whether in the general public interest we should order redistricting and another primary election prior to the November 3, 1964, election.

It is argued by counsel for plaintiffs that L.B. 796 is invalid in its entirety and that filings should be had and nominations made and legislators elected at the November general election from the 43 districts as they existed prior to the enactment of L.B. 629. It is clear that these 43 districts are more unequal in population than the 49 districts created by the 1963 legislature. The discrimination as between electors in various parts of the State is more invidious under the 43 member legislature than under the 49 member plan. The 49 districts give a more equally effective voice in the election of members to the state legislature than was given by the 43 member legislature. We therefore reject this suggestion.

It is argued that a three-judge court in Colorado has ordered that the legislature immediately redistrict in conformity with the announced opinions of the United States Supreme Court. It should be pointed out that Colorado does not hold its primary until September and thus the situation in Nebraska, for the reasons above pointed out, is dissimilar.

We have considered the suggestion that the ballot should be so set up for the November, 1964 general election that all voters in Nebraska can express themselves on the legislative candidates in all 49 districts by an at-large election.

The complications in formulating a ballot, the difficulty for electors to become informed, the expense of campaigning, the confusion that will result and the increase in election costs are among the factors leading the court to the conclusion that the suggestion for an at-large election does not present a desirable solution, as to the November 1964 election.

We have considered the arguments relating to the length of and the staggering of the terms of the legislators. We regard these as matters for legislative action and believe they do not presently require our comment or action.

■ It is our conclusion that members of the Unicameral legislature should be elected at the general election to be held on November 3, 1964 in the 49 legislative districts created under L.B. 796. We hold that the legislature so elected will have *de facto* status when it meets for regular session in January, 1965; that it should have "an opportunity to fashion a constitutionally valid legislative apportionment plan"; that, following the teachings of the United States Supreme Court in the cases cited herein, it should promptly and prior to adjournment of its regular session and in ample time for orderly filings for the primary and general elections to be held in 1966, fashion such plan, "determine the number of members to be elected," with such provision for the length and staggering of the terms thereof as may be required, and divide the state into the same number of districts, within the constitutional limits of not less than 30 nor more than 50, as it shall determine for the membership; that it should hold office and function until the election and qualification of members of a new legislature to be elected in the 1966 general election from the districts so fashioned and created. If a proper enactment, within the scope of this opinion, is not so enacted by the legislature, the court will take appropriate action.

We therefore reserve jurisdiction herein for such further orders, if any, as subsequently may be deemed proper.