**Phill SILVER, as a citizen of the United States and of the State of California, etc., Plaintiff,**

**v.**

**Frank M. JORDAN, in his official capacity as Secretary of State of California, et al., Defendants.**

**No. 62–953 MC.**

United States District Court
S. D. California,
Central Division.

Dec. 3, 1964.

Judgment Affirmed June 1, 1965.
See 85 S.Ct. 1572.

Carr, J., dissented.

Phill Silver, Los Angeles, Cal., for plaintiff.

Thomas C. Lynch, Atty. Gen., Charles E. Corker, Charles A. Barett, Asst. Attys. Gen., Sanford N. Gruskin, Deputy Atty. Gen., Los Angeles, Cal., A. C. Morrison, Legislative Counsel, George H. Murphy, Chief Deputy, Legislative Counsel, J. Gould, Principal Deputy Legislative Counsel, Sacramento, Cal., Herman F. Selvin, Sp. Counsel, Los Angeles, Cal., Edwin J. Regan, Senator, Weaverville, Cal., of counsel, for defendants.

Before BARNES, Circuit Judge, and CROCKER and CARR, District Judges.

PER CURIAM.

Since the historic pronouncement by the Supreme Court of the United States in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (decided March 26, 1962), the federal courts of the United States have been literally flooded with suits by voters, alleging either "the debasement" of their vote by state legislative action, or by the failure or alleged inability of the state legislature to act pursuant to constitutional requirements, which in either event have resulted in "invidious discrimination" against the litigant, and others in his class, which amounts to or results in a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. This is one of those cases.

Plaintiff, Phill Silver, filed this class action on July 16, 1962, as a citizen of the United States and of California, and as an elector and registered voter of Los Angeles County, on his own behalf and on behalf of all other citizens, electors, and registered voters of the State of California, similarly situated. The defendants are sued in their representative capacities as State officials, performing duties in respect to State elections.

The complaint alleged a deprivation of rights under the California Constitution and under the Equal Protection Clause of the Fourteenth Amendment. It is asserted, and we hold, that this court has jurisdiction under the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. § 1343(3). Relief is prayed for under 28 U.S.C. §§ 2201, 2202.

Since relief was sought under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202), a three-judge District Court was convened. The plaintiff prayed for injunctive relief to enjoin the 1962 General Election as it applied to the election of State Senators. Plaintiff alleged that the present apportionment of the California State Senate, (Cal. Const. Art. IV, Sec. 6, as amended in 1926), deprived him and all others similarly situated of due process of law and the equal protection of the law. Furthermore, he alleged that his right to equal suffrage in a free and equal election had been deprived in violation of both the California Constitution and the Fourteenth Amendment of the U. S. Constitution.

On August 30, 1962, this court handed down its opinion and order (Civil Action No. 62–953 MC) holding that it had jurisdiction, Baker v. Carr, supra at 204–08, 82 S.Ct. 691, and that the subject matter of this suit was justiciable, not a

non-justiciable political question regarding the relationship between the judiciary and its co-ordinate branches of the Federal Government. Baker v. Carr, supra at 208–36, especially at 217, 82 S.Ct. 691. All of defendants' motions to dismiss were denied. However, this court, while retaining jurisdiction, denied any injunctive relief at that time, as there was then available to the plaintiff a State remedy, namely, the Initiative Measure on the 1962 General Election Ballot, Proposition 23, which, if passed, would have reapportioned the State Senate.

## II

The California Constitution of 1849 and the revised Constitution of 1879 provided for representation on the basis of population in both houses of the Legislature (Cal.Const.1849, Art. IV, §§ 28–29; Cal.Const.1879, Art. IV, § 6) and vested the entire lawmaking power of the State in that body. (Cal.Const.1849, Art. IV, § 29; Cal.Const.1879, Art. IV, § 6).

In response to Governor Hiram Johnson's call to allow the people the right to check any abuse of power by the Legislature, the Legislature in 1911 submitted to the voters of the state a constitutional amendment, which was passed by the electorate, reserving to them the right to initiate and enact laws, which is the initiative, and to prevent laws enacted from becoming effective, which is the referendum. (Cal.Const. Art. IV, § 1; Hichborn, Story of the California Legislature of 1911, p. 93).

After the 1920 decennial census, the 1921, 1923 and 1925 sessions of the State Legislature failed to enact any reapportionment scheme, as demanded by the U. S. Constitution, Art. I, § 2. The people of the State responded to the inaction of the legislators and on the 1926 election ballot they qualified two proposals by initiative for the consideration of the electorate. Proposition 20 would have retained the apportionment of the two houses as they then existed, namely, on a population basis; whereas, Proposition 28 presented the so-called "Federal Plan" to the electorate, which would retain the

Assembly's apportionment on a population basis, but the State Senate was to be apportioned largely on a geographic basis. Proposition 28 was based on existing representation in the Congress of the United States. Proposition 28 was adopted, and Proposition 20 was rejected. Thus, since 1926, California has retained this "Federal Plan" in its apportionment of seats in the California Legislature. It is this amendment to Art. IV, § 6 of the California Constitution, which the plaintiff challenges here. Since the adoption of Proposition 28 in 1926, the State Legislature has never failed to comply with the Federal requirement of apportioning its seats every ten years in accordance with the Federal Census.

Presently, the State of California is divided into forty senatorial districts. Furthermore, no county is to have more than one representative in the Senate, and no Senator is to represent more than three counties. (Cal.Const. Art. IV, § 6, Cal.Elections Code § 30100). There is no controversy here over the constitutionality of the apportionment of seats in the State Assembly, containing 80 members, since the apportionment in the lower house is based solely on population. (Cal. Const. Art. IV, § 6; Cal.Elections Code § 30201).

Since the Amendment to Article IV, Section 6 was adopted in 1926, there have been four attempts by the initiative process to revert back to the pre-1926 apportionment. But the electorate in 1928, 1948, 1960 and most recently in 1962, has rejected these initiatives. Since 1951 there have been numerous bills introduced in the State Legislature for the apportionment of the State Senate on a population basis, but all of these attempts have been killed by the Senate or died without any action by both houses.

## III

It is pertinent to note the various population disparities which exist in the present apportionment of seats in the California State Senate under Art. IV, § 6, as amended in 1926. For example, according to the last Federal Census

(1960), the population of the 38th Senatorial District, comprising Los Angeles County, is 6,380,771. The population of the 28th Senatorial District, comprising Mono, Inyo, and Alpine Counties, is 14,294. This is a ratio of almost 450:1. Other great disparities exist with respect to other Senatorial Districts, i. e., 40th Senatorial District, San Diego County, 100:1 as compared to District 28; 16th Senatorial District, Alameda County, 90:1 as compared to District 28; 14th Senatorial District, San Francisco County, 60:1 as compared with District 28; 35th Senatorial District, Orange County, 50:1 as compared to District 28; to name a few. Thus about one-third of the total population of the State of California today controls more than two-thirds of the representation in the State Senate. (See U. S. Census of Population, 1960, California, U. S. Department of Commerce, Bureau of the Census, p. 23).

## IV

### INTERVENTION OF THE STATE SENATE

■ The California State Senate's motion to intervene as a substantially interested party was granted because it would be directly affected by the decree of this court. Fed.R.Civ.P. 24(a) (2); Calif.Const. Art. IV, §§ 1, 4, 5 and 6; California v. United States, 180 F.2d 596 (9th Cir. 1950); Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960); Ex Parte D. O. McCarthy, 29 Cal. 395 (1866).

## V

### LEGAL EFFECT UPON THIS SUIT OF THE VARIOUS LITIGATION INITIATED IN THE CALIFORNIA SUPREME COURT BY APPLICATIONS FOR WRITS OF MANDAMUS, WHICH WERE ALL DENIED

In Yorty v. Anderson, 60 Cal.2d 312, 33 Cal.Rptr. 97, 384 P.2d 417 (1963); Yorty v. Jordan, Sac. No. 7543 (appealed to the U. S. Supreme Court, October 1964 Term, Case No. 250, and dismissed for want of jurisdiction on October 12, 1964, 379 U.S. 8, 85 S.Ct. 68, 13 L.Ed.2d 22); and Yorty v. Jordan, Sac. No. 7582, the plaintiffs sought a writ of mandate from the Supreme Court of the State of California to compel a reapportionment of the Senate of Legislature of the State of California on a population basis.

In denying a writ in the last named case, the Supreme Court of California said:

"The petition to intervene and the petition for the writ of mandate are denied for the reason that any determination by this court on the question of legislative reapportionment would be premature until such time as the Legislature has had an opportunity to consider the matter and to take such action as it may deem to be required pursuant to the expression of the United States Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and companion cases."

■ None of these cases have any effect on the present suit, for in Yorty v. Anderson, supra, the case was determined on a non-federal question, i. e., the plaintiff had misjoined the wrong party as defendant. The proper party defendant should have been the Secretary of State, not the members of the Reapportionment Commission, which had no jurisdiction to reapportion the legislature, unless the Legislature failed to act, which it had not. The other two cases, resulting in denials of petitioners' request, were denied without any opinion. It is apparent that none of these cases have directly reached the federal constitutional question of an alleged denial of petitioner's rights under the Equal Protection Clause of the Fourteenth Amendment, and, as such, they have no relation to our decision here.

## VI

### DELAY

Although the plaintiff herein originally sought injunctive relief, which this

court temporarily denied, his position subsequently changed. Despite the fact no initiative petitions proposing reapportionment of the California Senate had been filed with the State by June 25th, 1964 (the last day for filing such initiative proceedings) and that none of the twelve proposed amendments to the California Constitution, appearing on the November 3rd, 1964 election ballot, related to reapportionment of the California Senate, it was stipulated (Supplementary Stipulation of Facts No. 3, ¶ XXI): "The plaintiff does not seek any injunctive or mandatory relief in connection with the November 3, 1964 general election."

This court deemed it proper, in view of the lack of demand for injunctive relief, to obtain the benefit of the argument of plaintiff, and original defendants, and more particularly that of the intervening Senate, as to the meaning and effect of the group of cases on this novel and revolutionary legal theory, decided by the Supreme Court of the United States on June 15, 1964. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc., v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632.

These cases dispose of each position taken by the intervening plaintiffs. They establish the existence of "malapportionment" in California Senate election districts, on the facts present before us. But they did not require immediate action by this court, for all reiterate the principle that in awarding relief for malapportionment of election districts, a District Court should consider many factors, including the proximity of the forthcoming election, the complexities of the election laws, etc., and above all should rely on general equitable principles.

## VII

### DIFFUSION OF POLITICAL POWER BETWEEN THINLY AND HEAVILY POPULATED COUNTIES IS NOT PERMISSIBLE

Defendants contend that population is not the only basis for an apportioning of seats in a bicameral legislature; as such, California's so-called "Federal Plan" is constitutionally valid. (Cal.Const. Art. IV, § 6, as amended in 1926). The defendants contend that such was the rule as laid down in Baker v. Carr, supra. Baker held only that the petitioners had stated a cause of action, and thus the Supreme Court remanded the cause to the District Court in Tennessee for a hearing on the merits. In Grey v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), the court held that the Georgia County Unit System was unconstitutional as it "watered-down" the weight of the votes of certain Georgia voters simply because of their residence. Such discrimination cannot be justified, for the Equal Protection Clause as well as the Fifteenth and Nineteenth Amendments demand "One-Man, One-Vote." Thus it was apparent that the "handwriting was on the wall" with the Grey decision, and the pinnacle was reached in the landmark Reapportionment Cases of June 1964.

In considering whether or not the State's legislative apportionment method amounts to an invidious discrimination violative of rights asserted under the Equal Protection Clause, the crucial point is that these rights purportedly violated are individual and personal in nature. Reynolds v. Sims, 377 U.S. 533, 561, 84 S.Ct. 1362, affirming and remanding 208 F.Supp. 431 (M.D.Ala., 1962). Even though the court's holding may result in a reapportionment of the California State Senate, this court must predominantly concern itself in ascertaining if the plaintiff and others similarly situated have been so invidiously discriminated against as to constitute a prohibited dilution of their constitutionally protected

right to vote. The court stated in Reynolds v. Sims, supra:

"Legislators represent People, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. As long as ours is a representative form of government, and our legislators are those instruments of government elected directly by and directly representative of the people, the right to elect legislators in a free and unimpaired fashion is a bedrock of our political system." 377 U.S. at 562, 84 S.Ct. at 1382; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, reversing and remanding 208 F.Supp. 368 (S.D.N.Y.1962); Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, reversing and remanding 229 Md. 406, 184 A.2d 715; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, affirming and remanding 213 F. Supp. 577 (E.D.Va.1962); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620, affirming and remanding 215 F.Supp. 169 (Del. 1963); Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, reversing and remanding 219 F.Supp. 922 (Colo.1963).

In California the Twenty-Eighth Senatorial District, Inyo, Mono and Alpine Counties, had a population of 14,294 according to the 1960 Federal Census, contrasted with the 38th Senatorial District, Los Angeles County, with a population of 6,380,771. The disparity here in favor of the residents of the 28th District is almost 450 to 1. It is invidious discrimination against the residents of Los Angeles County and is debasement of their right to vote and deprives them of the Equal Protection of the Laws as guaranteed by the Fourteenth Amendment. Reynolds v. Sims, supra. The votes of the voters of Los Angeles County simply do not count as much as the votes of the voters of Alpine, Mono and Inyo Counties. It takes 450 Los Angeles County voters to equal one vote cast by a voter in the 28th District. In Maryland Committee v. Tawes, supra, the ratio

was 32 to 1 in the State Senate in the variance of allocation of seats between the most populous and least populous counties, and 12 to 1 in the House. In Davis v. Mann, supra, the population variance in the State Senate was 2.65 to 1, and in the House, 4.36 to 1. In Roman v. Sincock, supra, the population variance was 15 to 1 for the Senate, and in the House, 35 to 1. Lastly, in Lucas v. Colorado General Assembly, supra, the population variance, after the enactment of the Constitutional referendum by the voters in 1962, adopting an apportionment which divided the seats on population and other factors in the State Senate and population in the House, in the Senate was 3.6 to 1 and in the House, 1.7 to 1. In all these cases the court held, in line with the Reynolds doctrine of apportionment on a "Substantially-Equal" Population Basis, that they all failed to meet the requisites of this rule and were, therefore, unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

The court held in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481: "We do not believe that the Framers of the Constitution intended to permit the same vote-diluting discrimination to be accomplished through the device of districts containing widely varied numbers of inhabitants. To say that a vote is worth more in one district than in another would * * * run counter to our fundamental ideas of democratic government. * * *" 376 U.S. 1, at 8, 84 S. Ct. 526, at 531. Thus the court held in Reynolds v. Sims, supra, that population is the central point for determination and the main basis for judgment in legislative apportionment controversies.

"A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of 'government of the people, by the people, [and] for

the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all *places* as well as of all races." 377 U.S. at 568, 84 S.Ct. at 1384 (Emphasis added.).

Then Chief Justice Warren, writing for the majority held:

" * * * as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." 377 U.S. at 568, 84 S.Ct. at 1385.

Defendants' contention that population is not the only basis for apportioning of seats in the State Senate and that a diffusion of political power between urban and rural areas is permissible cannot be sustained, as such a position is the antithesis of the doctrine which Reynolds v. Sims, supra, and all its companion cases have established.

The reliance on MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3, by the defendants is futile in light of Reynolds v. Sims, supra, and its companion cases. They have completely misinterpreted Baker v. Carr, supra, where the majority in citing MacDougall did not give their approval, but rather clearly disapproved it, for the court stated:

"In MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3, the District Court dismissed for want of jurisdiction, which had been invoked under 28 U.S.C. § 1343(3), 28 U.S. C.A. § 1343(3), a suit to enjoin enforcement of the requirement that nominees for state-wide elections be supported by a petition signed by a minimum number of persons from at least 50 of the State's 102 counties. *This Court's* disagreement with that action is clear since the

Court affirmed the judgment after a review of the merits and concluded that the particular claim there was without merit." 369 U.S. at 203, 82 S.Ct. at 702. (Emphasis added.)

Clearly, by the Court's own language it has disapproved the earlier MacDougall v. Green, supra, holding, for it held that "this Court" disagrees with the earlier holding. Therefore, although not expressly overruled, MacDougall v. Green, supra, is now obsolete in light of Baker v. Carr, supra, and Reynolds v. Sims, supra.

■ California's Senatorial apportionment under Art. IV, § 6, as amended in 1926, is invidiously discriminatory, being based on no constitutionally valid policy; therefore it is invalid under the Equal Protection Clause of the Fourteenth Amendment, since it substantially dilutes one's right to vote solely because of where one happens to reside. Reynolds v. Sims, supra; Maryland Committee v. Tawes, supra; Davis v. Mann, supra; Roman v. Sincock, supra; WMCA, Inc. v. Lomenzo, supra; and Lucas v. Colorado General Assembly, supra; Paulson v. Meier, 232 F.Supp. 183 (No. Dak., S.W., July 1964); and League of Nebraska Municipalities v. Marsh, 232 F.Supp. 411 (Nebr., July 1964).

Any reliance by the defendants on Scholle v. Hare, 367 Mich. 176, 116 N.W. 2d 350, and its subsequent companion cases, under the 1963 Michigan Constitution, Art. IV, §§ 2–6, in 372 Mich. 418, 126 N.W.2d 731, (see latter case's two supplemental opinions in 372 Mich. 461, 126 N.W.2d 731 and 128 N.W.2d 350) is now futile. This is necessarily so, for the Supreme Court in a per curiam decision, Marshall v. Hare, 378 U.S. 561, 84 S.Ct. 1912, 12 L.Ed.2d 1036; based on Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, and Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, reversed and remanded for further hearings consistent with the Reynolds' rule, Marshall v. Hare, 227 F.Supp. 989 (E.D.Mich., 1964), the exact same case, which had been instituted in the District Court. The discrepancy in representa-

tion in Michigan was about 4 to 1; like all the other reapportionment decisions handed down last June, it, too, was invalid under the Reynolds' doctrine.

## VIII

## AVAILABLE POLITICAL REMEDIES, AS THE INITIATIVE AND REFERENDUM, HAVE NO CONSTITUTIONAL SIGNIFICANCE

■ Any reliance on the political remedies of initiative and referendum (Cal. Const. Art. IV, § 1) has no constitutional relevance. Even though a majority of the electorate may have voted to retain the present apportionment scheme in California under Art. IV, § 6, as amended in 1926, such a vote cannot be sustained, if it deprives others of the Equal Protection of the Laws under the Fourteenth Amendment. Reynolds v. Sims, supra, and Lucas v. Colorado General Assembly, supra. The Court in Lucas v. Colorado General Assembly, supra, was explicit on this point:

" * * * While a court sitting as a court of equity might be justified in temporarily refraining from the issuance of injunctive relief in an apportionment case in order to allow for resort to an available political remedy, such as initiative and referendum, individual constitutional rights cannot be deprived, or denied judicial effectuation, because of the existence of a nonjudicial remedy through which relief against the alleged malapportionment, which the individual voters seek, might be achieved. An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act. * * * A citizen's

constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause, as delineated in our opinion in Reynolds v. Sims. And we conclude that the fact that a practicably available political remedy, such as initiative and referendum, exists under state law provides justification only for a court of equity to stay its hand temporarily while recourse to such a remedial device is attempted or while proposed initiated measures relating to legislative apportionment are pending and will be submitted to the State's voters at the next election." 377 U.S. at 736–737, 84 S.Ct. at 1473, 1474.

Therefore, it is clear that the mere fact that California voters have consistently rejected any reapportionment of the State Senate on a population basis by the initiative process in the elections of 1928, 1948, 1960 and 1962 is immaterial. The rejection cannot be immune from constitutional attack on the ground that it violates the plaintiff's and all others similarly situated right to vote without having such right being substantially diluted by the mere fact of their residence, which is in direct violation of the rights guaranteed under the Fourteenth Amendment. Reynolds v. Sims, supra, and Lucas v. Colorado General Assembly, supra.

## IX

## CAN CALIFORNIA'S GREAT DIVERSITY OF PEOPLES, RESOURCES, INTEREST AND ACTIVITIES OVERRIDE THE EQUAL PROTECTION PRINCIPLE?

■ It is the position of the defendants that California's apportionment of its State Senate (Art. IV, § 6, as amend-

ed in 1926) is constitutionally rational in light of the State's size, diversity, interests and activities. This argument had it been made prior to Baker v. Carr, supra, and its progeny, would have been highly persuasive. But these other factors cannot be sustained where the deviation is so clearly invidious, as is the case here in California (almost 450 to 1 in two districts). Reynolds v. Sims, supra; Lucas v. Colorado General Assembly, supra; Davis v. Mann, supra; Roman v. Sincock, supra; Maryland Committee v. Tawes, supra; and WMCA, Inc. v. Lomenzo, supra. The rule laid down in Reynolds and its companion cases will allow for a slight deviation from the "Substantially Equal Population" Doctrine, where such is incident to the effectuation of a rational state policy. The Court in Reynolds v. Sims, supra, held:

> " * * * neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes. Considerations of area alone provide an insufficient justification for deviations from the equal-population principle. Again, people, not land or trees or pastures, vote. Modern developments and improvements in transportation and communications make rather hollow, in the mid-1960's, most claims that deviations from population-based representation can validly be based solely on geographical considerations. Arguments for allowing such deviations in order to insure effective representation for sparsely settled areas and to prevent legislative districts from becoming so large that the availability of access of citizens to their representatives is impaired are today, for the most part, unconvincing." 377 U.S. at 579–80, 84 S.Ct. at 1391.

Thus any reliance on California's large area, diverse interests, history, sectional differences, that districts would be too large in area, and the like, are immaterial, since California's State Senate is strictly apportioned on an area basis (Art. IV, § 6, as amended in 1926) without any consideration to the substantially-equal population doctrine by Reynolds v. Sims, supra, and its companion cases.

## X

### FEDERAL SCHEME ANALOGY

■ Furthermore, defendants contend that the present apportionment of the California State Senate (Art. IV, § 6, as amended 1926) can, nevertheless, be sustained because it is patterned after the Federal Congress. Factually, the similarity is clear, for in California the Assembly is apportioned strictly on a population basis (Cal.Const. Art. IV, § 6), analogous to the House of Representatives (U.S.C., Const. Art. I, § 2, cl. 3), whereas, the State Senate, being apportioned on an area basis with no more than one Senator for each county, is analogous to the United States Senate, where each State is entitled to two Senators regardless of population (Seventeenth Amendment of the U. S. Constitution). But, legally, this analogy is inapposite and irrelevant to State Legislative Districting schemes. The Court in Reynolds v. Sims, supra, adopted the opinion of the lower court on this matter, which had held that the Alabama counties were merely involuntary political units of the State created by statute to aid in the administration of the State Government. Sims v. Reynolds, 208 F.Supp. 431 (M.D.Ala.1961). The Court held that the federal analogy argument is generally the last hope when it is clear that a state's apportionment is, as is California's, invidiously maladjusted. The Supreme Court holds our Founding Fathers did not intend to establish any pattern for state legislative apportionment when the representation in the Federal Congress was adopted. Reynolds v. Sims, supra; Maryland Committee v. Tawes, supra; Roman v. Sincock, supra; Davis v. Mann, supra; and Lucas v. Colorado General Assembly, supra. The Court in Reynolds proceeded:

" \* \* \* The fact that almost three-fourths of our present States were never in fact independently sovereign does not detract from our view that the so-called federal analogy is inapplicable as a sustaining precedent for state legislative apportionments. The developing history and growth of our republic cannot cloud the fact that, at the time of the inception of the system of representation in the Federal Congress, a compromise between the larger and smaller States on this matter averted a deadlock in the Constitutional Convention which had threatened to abort the birth of our Nation. \* \* \*

"Political subdivisions of States —Counties, cities, or whatever— never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. \* \* The relationship of the States to the Federal Government could hardly be less analogous." 377 U.S. at 574–75, 84 S.Ct. at 1388.

Defendant makes further mention that the different basis of apportionment in the California Legislature is necessary to maintain the proper checks and balances between the two houses of the legislature, as is the case in the Federal Congress. This again might be a forceful argument were this a case of first impression, but this argument is of no avail in light of the Court's holding that the Federal Analogy is inapposite and irrelevant to state legislative schemes. This is seen from the Court's holding in Reynolds:

"We do not believe that the concept of bicameralism is rendered anachronistic and meaningless when the predominant basis of representation in the two state legislative bodies is required to be the same— population. A prime reason for bicameralism, modernly considered,

is to insure mature and deliberate consideration of, and to prevent precipitate action on, proposed legislative measures. Simply because the controlling criterion for apportioning representation is required to be the same in both houses does not mean that there will be no differences in the composition and complexion of the two bodies. Different constituencies can be represented in the two houses. One body could be composed of single-member districts while the other could have at least some multimember districts. The length of terms of the legislators in the separate bodies could differ. The numerical size of the two bodies could be made to differ, even significantly, and the geographical size of districts from which legislators are elected could also be made to differ. And apportionment in one house could be arranged so as to balance off minor inequalities in the representation of certain areas in the other house. In summary, these and other factors could be, and are presently in many States, utilized to engender differing complexions and collective attitudes in the two bodies of a state legislature, although both are apportioned substantially on a population basis." 377 U.S. at 576–77, 84 S.Ct. at 1389.

## XI

## CONCLUSION

The present plan of Senate apportionment by districts in California is unconstitutional, being an invidious discrimination of citizens' rights and violative of the Equal Protection Clause of the XIV Amendment to the United States Constitution, as interpreted and determined by the Supreme Court of the United States.

## XII

## RELIEF

█ Equitable principles must guide this court in whatever relief it determines is just and appropriate under the

circumstances of this case. (Baker v. Carr, supra; Reynolds v. Sims, supra.)

This court asserts and agrees that "legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." Reynolds v. Sims, supra at 586, 84 S.Ct. at 1394.

At the same time, this court feels required to state (as a three-judge court in this circuit has heretofore said with respect to reapportionment of both houses of the State Legislature of the State of Washington):

"In the legal climate of today, no citizen may acquire a right to a legal status created by unremitting legislative disregard of sacred constitutional rights." Thigpen v. Meyers, 211 F.Supp. 826 (W.D. Wash. 1962).

■ If the California State Legislature once ordered fails to act, and to act with promptness, we, ever conscious of our oath to uphold the Constitution of the United States, will unhesitatingly take appropriate action to correct the inequity.

This court, having determined that the primary objective of any order or decree at this time should be to effectively induce the 1965 session of the California State Legislature *to properly reapportion itself as its first order of business*, makes no order at this time other than the following:

(1) It is the order of this court that the California State Legislature reapportion the California State Senate consistent with this opinion, and the several existing United States Supreme Court decisions on the subject, so that the Reynolds' doctrine of "districts of substantial equality in population" exists.

(2) Should the California State Legislature fail to discharge its duty to fairly, adequately and validly redistrict State Senatorial Districts within the State of California, by not later than July 1, 1965, this court will, before or after that date, hold further hearings, or motions; devise redistricting plans; and make such further orders or take such further steps as may be necessary or appropriate (either upon its own motion, or on the motion of any party or intervenor), and to that end we retain full jurisdiction of this case for such purpose, and all others.

CARR, District Judge, dissents.