Renn DRUM, Jr., on Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

Malcolm B. SEAWELL, Chairman of the North Carolina State Board of Elections, John G. Clark, Mrs. Robert W. Proctor, Hiram H. Ward, and Paul Osborne, Members of the North Carolina State Board of Elections, Defendants,

and

D. S. Swain, Jr., Plaintiff-Intervenor.

No. C–168–WS–65.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Nov. 30, 1965.

G. Ray Motsinger, Winston-Salem, N. C., for plaintiff.

T. Wade Bruton, Atty. Gen. of North Carolina, James F. Bullock, Asst. Atty. Gen., Raleigh, N. C., and H. S. Merrell and Thomas L. Young, Rocky Mount, N. C., for defendants.

John A. Wilkinson and James R. Vosburgh, Washington, N. C., for plaintiff-intervenor.

R. Mayne Albright, Raleigh, N. C., Charles F. Lambeth, Jr., Thomasville, N. C., James Mattocks, High Point, N. C., McNeill Smith, Greensboro, N. C., Ralph M. Stockton, Jr., Winston-Salem, N. C., William L. Thorp, Jr., Rocky Mount, N. C., and Joseph W. Grier, Jr., Charlotte, N. C., for North Carolina Chapter American Civil Liberties Union, amicus curiae.

Before J. SPENCER BELL, Circuit Judge, and EDWIN M. STANLEY and ALGERNON L. BUTLER, District Judges.

J. SPENCER BELL, Circuit Judge:

This action is brought by the plaintiff, Renn Drum, Jr., a citizen of North Carolina and a registered voter, on behalf of himself and others similarly situated against the Chairman and members of the North Carolina Board of Elections. He alleges invidious discrimination against himself and others so situated in the manner in which the State has been apportioned for the election of members of the two Houses of the State Legislature and of the United States House of Representatives. The action seeks a declaratory judgment holding Article II, Sections 5 and 6, of the North Carolina Constitution and the Acts apportioning the State to be unconstitutional and an injunction forbidding further elections until the Legislature shall properly apportion and if the Legislature fails properly to apportion within a specified time, that the court then do so itself. During the pendency of the action, D. S. Swain, Jr., moved for leave to file a complaint in intervention for the purpose of seeking an injunction against the holding of a special primary and election to fill a vacancy existing in the First Congressional District. The intervention was allowed.

The parties to the action have stipulated the facts with respect to the geographical areas, the population and the representation of each of the districts and counties into which the State is divided for the purposes of electing State Senators and Representatives and United States Representatives. The court finds the facts to be as stipulated with respect to these statistics and data, copies of which are appended.

The defendants concede that the complaint states a cause of action. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); 42 U.S.C. §§ 1983 and 1988; U.S.Const. Amend. XIV. Jurisdiction is vested in this court under 28 U.S.C. § 1343(3) and the declaratory judgment act, 28 U.S.C. § 2201.

In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court laid down guide lines to assist the lower courts in implementing the constitutional guaranties of suffrage. The Equal Protection Clause requires substantially equal representation for all citizens in a state in each of the two Houses of a state bicameral Legislature. This right may not be debased by weighing votes differently according to where a citizen happens to reside. Representation in state legislative bodies must be, as nearly as practicable, apportioned on districts of equal population though mechanical exactness is not required. Political subdivisions may be recognized but not at the cost of substantial equality among the several districts. Considerations of history, economic or other group interests or area alone do not justify substantial deviations from the equal population concept. Nor will the presence of large numbers of military and military related personnel justify the underrepresentation of an area. "Discrimination against a class of individuals, merely because of the nature of their employment, without more being shown, is constitutionally impermissible." Davis v. Mann, 377 U.S. 678, 691, 84 S.Ct. 1441, 1448, 12 L.Ed.2d 609 (1964).

The court, while rejecting a rigid application of a mathematical formula, has laid down two statistical tests in evaluating the State's "honest and good faith

effort to construct districts, * * * as nearly of equal population as is practicable." First, the *minimum controlling percentage*; i. e., the percentage of the State's population which resides in the least populous districts which can elect a majority of each House; and second, the *population variance ratio*; i. e., the ratio between the most populous district and the least populous district of the State.

■ We turn to the congressional districting of the State. There are eleven districts and the proportional representation per district is 414,196 persons. We note that six of the eleven districts vary from the average by more than 10 per cent; four by more than 15 per cent, and only two districts are within 5 per cent of the average. The smallest district in population (the first) contains 136,335 less than the average while the largest (the eighth) contains 77,265 more than the average. No valid explanation is offered to justify these glaring discrepancies, if indeed they could be justified. We agree with the statement in the Amicus brief that the minimum controlling percentage is not significant. We are concerned with the population variance ratio of 1.8 to 1. Such a variance cannot be justified. In Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), the Court said:

> "We hold that, construed in its historical context, the command of Art. I, § 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's."

Because of the unconstitutionally discriminatory apportionment embodied therein, we hold the statute (N.C.G.S. § 163–103) creating the several districts for the purpose of selecting representatives to the Congress of the United States to be null and void.

■ The Constitution of North Carolina (Art. II, §§ 5 and 6) provides that the House of Representatives shall consist of 120 members and that each of the State's counties shall have at least one representative "although it may not contain the requisite ratio of representation." The remaining 20 are to be divided among the more populous counties. The House is now apportioned in accordance with this requirement. The proportional representation in the House is one member per 37,968 persons. The member from Wayne County has 82,059 constitutents and the member from Tyrrell 4,520. A population variance of 18.2 to 1. Sixty-one of the least populous counties having a population of 1,234,325 can elect a majority of the House. Thus the minimum controlling percentage is 27.1%. These variances are too great to be acceptable. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Lucas v. Forty-Fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Harris v. Anderson, 194 Kan. 302, 400 P.2d 25, cert. denied, 382 U.S. 894, 86 S.Ct. 185, 15 L.Ed.2d 150. We cannot accept the State's argument that this formula has been in the Constitution since 1836 and that the State re-entered the Union with the formula in effect. Reynolds v. Sims, supra. We note, however, that when the formula originally took effect the State had 65 counties, leaving 55 memberships in the House to be apportioned. Today with 100 counties only ⅙ of the House remains to be apportioned among the most populous counties. North Carolina has no provisions for initiative and referendum; its Governor has no veto power, thus the people of the State have no practical means by which to rectify an imbalance of representation in one of the most powerful legislative bodies in America.

We hold that the provisions of the State Constitution requiring that each county be afforded at least one Representative regardless of its population and the implementing statute (N.C.G.S. § 120–2) to be in violation of the Equal Protection provisions of the Fourteenth Amendment and therefore null and void.

■ The North Carolina Constitution, Article II, Section 4, requires the General Assembly to alter the senatorial districts after the return of every census so that each district, as nearly as may be, shall have an equal number of inhabitants. Pursuant to this mandate, the 1963 Act (N.C.G.S. § 120–1) apportioned the fifty Senators among 36 districts of the State. An examination of the evidence shows that each of the fifty Senators should ideally represent 91,123 persons; that the smallest district in terms of population contains 65,722 persons and the three largest, respectively, 123,260, 127,074, and 148,418. We note that the minimum controlling percentage is 47.1 and the population variance ratio 2.3 to 1.

We note that every one of the counties in the five most overrepresented senatorial districts is also overrepresented in the House and that the seven most overrepresented counties in the House are included in the three most overrepresented senatorial districts.

While we note that the apportionment of the Senate is far more nearly equitable than that of the House, we may not validate either body in the abstract since it must be considered in relation to the other branch of the legislative body as it is finally apportioned.

" * * * the proper, and indeed indispensable subject for judicial focus in a legislative apportionment controversy is the overall representation accorded to the State's voters, in both houses of a bicameral state legislature." Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 673, 84 S.Ct. 1429, 1439, 12 L.Ed.2d 595 (1964).

We hold that the apportionment of the Senate as it now exists is not sufficiently grounded on population to be constitutionally sustainable. N.C.G.S. § 120–1 is therefore held to be null and void. Lucas v. Fourth General Assembly of State of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964). Counsel for the State has urged this court to furnish in its opinion as much guidance as possible to the Legislature, should we find it necessary to require reapportionment. In conformity with this request we point out that the variance ratio between the three highest districts and the remainder of the State is on its face unjustifiable in the light of the fact that the remainder of the State could be apportioned on a population variance of only 1.3 to 1. The obligation of the State is to apportion as nearly equally as possible on a population based representation, and even minor deviations must be free from any taint of arbitrariness or discrimination. Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964).

■ The plaintiff having proven his charge of discrimination on the basis of population by evidence to which the parties have stipulated, the burden was placed upon the defendants to justify the variations from this standard which were shown to exist. The defendants have failed to meet this burden and we are forced to the conclusion that the plaintiff and those in his class are entitled to relief. Mann v. Davis, 213 F.Supp. 577, 584 (E.D.Va.1962). We will enter a judgment declaring the invalidity of the pertinent State constitutional and statutory provisions.

■■ We cannot allow the regularly scheduled 1966 primaries and elections to proceed under laws now held to be invalid. We recognize, however, that it is fit and proper that the Legislature of this State should be given an opportunity to rectify the inequities which exist before this court should undertake to do so. Ample time now exists before the primary scheduled for May 28, 1966, for the Governor to call a special session of the Legislature. We will, therefore, stay the mandate of our injunction until January 31, 1966, in order that such a session may be convened. If apportionment compatible to constitutional standards cannot be achieved by that date this court will regretfully undertake to fashion a scheme of apportionment which will permit the 1966 primaries and elections to proceed on a just and equitable basis. We think that the right of the people of the First Congressional District to be represented

in the Congress during the interval which must intervene while adequate consideration is given to a statewide reapportionment of our Congressional representation requires us to decline to interfere with the special election which has been called to fill the vacancy in that District.

Jurisdiction in this matter is retained.

An order will be entered in accordance herewith.

## APPENDIX TO OPINION

### CONGRESSIONAL DISTRICTS — 11

Proportional Representation Per District =

$$\frac{4,556,155}{11} = 414,196$$

Minimum Controlling Percentage – 48.6
Population Variance Ratio – 1.8 to 1

| District | Population in District | Percent of State's Total Population | Population Shortage for Apportioned Representation | Population Excess for Apportioned Representation | Percent of Over or Under Representation |
|---|---|---|---|---|---|
| No. 1 | 277,861 | 6.099 | 136,335 | | + 32.9 |
| No. 2 | 350,135 | 7.685 | 64,061 | | + 15.5 |
| No. 3 | 430,360 | 9.446 | | 16,164 | − 3.9 |
| No. 4 | 460,795 | 10.114 | | 46,599 | − 11.3 |
| No. 5 | 454,261 | 9.970 | | 40,065 | − 9.7 |
| No. 6 | 487,159 | 10.692 | | 72,963 | − 17.6 |
| No. 7 | 448,933 | 9.853 | | 34,737 | − 8.4 |
| No. 8 | 491,461 | 10.787 | | 77,265 | − 18.7 |
| No. 9 | 404,093 | 8.869 | 10,103 | | + 2.4 |
| No. 10 | 390,020 | 8.560 | 24,176 | | + 5.8 |
| No. 11 | 361,077 | 7.925 | 53,119 | | + 12.8 |

### HOUSE OF REPRESENTATIVES – 100 COUNTIES WITH 120 MEMBERS

Proportional Representation Per Member =

$$\frac{4,556.155}{120} = 37,968$$

Minimum Controlling Percentage – 27.1
Population Variance Ratio – 18.2 to 1

| County | Population | Number of Representatives in House | Population Per Apportioned Representative | Population Change to Give Equal Representation | |
|---|---|---|---|---|---|
| | | | | Shortage | Excess |
| Alamance | 85,674 | 2 | 42,837 | | 4,869 |
| Alexander | 15,625 | 1 | 15,625 | 22,343 | |
| Alleghany | 7,734 | 1 | 7,734 | 30,234 | |
| Anson | 24,962 | 1 | 24,962 | 13,006 | |
| Ashe | 19,768 | 1 | 19,768 | 18,200 | |
| Avery | 12,009 | 1 | 12,009 | 25,959 | |
| Beaufort | 36,014 | 1 | 36,014 | 1,954 | |

| County | Population | Number of Representatives in House | Population Per Apportioned Representative | Population Change to Give Equal Representation | |
|---|---|---|---|---|---|
| | | | | Shortage | Excess |
| Bertie | 24,350 | 1 | 24,350 | 13,618 | |
| Bladen | 28,881 | 1 | 28,881 | 9,087 | |
| Brunswick | 20,278 | 1 | 20,278 | 17,690 | |
| Buncombe | 130,074 | 2 | 65,037 | | 27,069 |
| Burke | 52,701 | 1 | 52,701 | | 14,733 |
| Cabarrus | 68,137 | 1 | 68,137 | | 30,169 |
| Caldwell | 49,552 | 1 | 49,552 | | 11,584 |
| Camden | 5,598 | 1 | 5,598 | 32,370 | |
| Carteret | 30,940 | 1 | 30,940 | 7,028 | |
| Caswell | 19,912 | 1 | 19,912 | 18,056 | |
| Catawba | 73,191 | 1 | 73,191 | | 35,223 |
| Chatham | 26,785 | 1 | 26,785 | 11,183 | |
| Cherokee | 16,335 | 1 | 16,335 | 21,633 | |
| Chowan | 11,729 | 1 | 11,729 | 26,239 | |
| Clay | 5,526 | 1 | 5,526 | 32,442 | |
| Cleveland | 66,048 | 1 | 66,048 | | 28,080 |
| Columbus | 48,973 | 1 | 48,973 | | 11,005 |
| Craven | 58,773 | 1 | 58,773 | | 20,805 |
| Cumberland | 148,418 | 3 | 49,473 | | 11,505 |
| Currituck | 6,601 | 1 | 6,601 | 31,367 | |
| Dare | 5,935 | 1 | 5,935 | 32,033 | |
| Davidson | 79,493 | 1 | 79,493 | | 41,525 |
| Davie | 16,728 | 1 | 16,728 | 21,240 | |
| Duplin | 40,270 | 1 | 40,270 | | 2,302 |
| Durham | 111,995 | 2 | 55,998 | | 18,030 |
| Edgecombe | 54,226 | 1 | 54,226 | | 16,258 |
| Forsyth | 189,428 | 3 | 63,143 | | 25,175 |
| Franklin | 28,755 | 1 | 28,755 | 9,213 | |
| Gaston | 127,074 | 2 | 63,537 | | 25,569 |
| Gates | 9,254 | 1 | 9,254 | 28,714 | |
| Graham | 6,432 | 1 | 6,432 | 31,536 | |
| Granville | 33,110 | 1 | 33,110 | 4,858 | |
| Greene | 16,741 | 1 | 16,741 | 21,227 | |
| Guilford | 246,520 | 4 | 61,630 | | 23,662 |
| Halifax | 58,956 | 1 | 58,956 | | 20,988 |
| Harnett | 48,236 | 1 | 48,236 | | 10,268 |
| Haywood | 39,711 | 1 | 39,711 | | 1,743 |
| Henderson | 36,163 | 1 | 36,163 | 1,805 | |
| Hertford | 22,718 | 1 | 22,718 | 15,250 | |
| Hoke | 16,356 | 1 | 16,356 | 21,612 | |
| Hyde | 5,765 | 1 | 5,765 | 32,203 | |
| Iredell | 62,526 | 1 | 62,526 | | 24,558 |
| Jackson | 17,780 | 1 | 17,780 | 20,188 | |
| Johnston | 62,936 | 1 | 62,936 | | 24,968 |
| Jones | 11,005 | 1 | 11,005 | 26,963 | |
| Lee | 26,561 | 1 | 26,561 | 11,407 | |
| Lenoir | 55,276 | 1 | 55,276 | | 17,308 |
| Lincoln | 28,814 | 1 | 28,814 | 9,154 | |

| County | Population | Number of Representatives in House | Population Per Apportioned Representative | Population Change to Give Equal Representation | |
|---|---|---|---|---|---|
| | | | | Shortage | Excess |
| McDowell | 26,742 | 1 | 26,742 | 11,226 | |
| Macon | 14,935 | 1 | 14,935 | 23,033 | |
| Madison | 17,217 | 1 | 17,217 | 20,751 | |
| Martin | 27,139 | 1 | 27,139 | 10,829 | |
| Mecklenburg | 272,111 | 5 | 54,422 | | 16,454 |
| Mitchell | 13,906 | 1 | 13,906 | 24,062 | |
| Montgomery | 18,408 | 1 | 18,408 | 19,560 | |
| Moore | 36,733 | 1 | 36,733 | 1,235 | |
| Nash | 61,002 | 1 | 61,002 | | 23,034 |
| New Hanover | 71,742 | 1 | 71,742 | | 33,774 |
| Northampton | 26,811 | 1 | 26,811 | 11,157 | |
| Onslow | 82,706 | 2 | 41,353 | | 3,385 |
| Orange | 42,970 | 1 | 42,970 | | 5,002 |
| Pamlico | 9,850 | 1 | 9,850 | 28,118 | |
| Pasquotank | 25,630 | 1 | 25,630 | 12,338 | |
| Pender | 18,508 | 1 | 18,508 | 19,460 | |
| Perquimans | 9,178 | 1 | 9,178 | 28,790 | |
| Person | 26,394 | 1 | 26,394 | 11,574 | |
| Pitt | 69,942 | 1 | 69,942 | | 31,974 |
| Polk | 11,395 | 1 | 11,395 | 26,573 | |
| Randolph | 61,497 | 1 | 61,497 | | 23,529 |
| Richmond | 39,202 | 1 | 39,202 | | 1,234 |
| Robeson | 89,102 | 2 | 44,551 | | 6,583 |
| Rockingham | 69,629 | 1 | 69,629 | | 31,661 |
| Rowan | 82,817 | 2 | 41,408 | | 3,440 |
| Rutherford | 45,091 | 1 | 45,091 | | 7,123 |
| Sampson | 48,013 | 1 | 48,013 | | 10,045 |
| Scotland | 25,183 | 1 | 25,183 | 12,785 | |
| Stanly | 40,873 | 1 | 40,873 | | 2,905 |
| Stokes | 22,314 | 1 | 22,314 | 15,654 | |
| Surry | 48,205 | 1 | 48,205 | | 10,237 |
| Swain | 8,387 | 1 | 8,387 | 29,581 | |
| Transylvania | 16,372 | 1 | 16,372 | 21,596 | |
| Tyrrell | 4,520 | 1 | 4,520 | 33,448 | |
| Union | 44,670 | 1 | 44,670 | | 6,702 |
| Vance | 32,002 | 1 | 32,002 | 5,966 | |
| Wake | 169,082 | 3 | 56,361 | | 18,393 |
| Warren | 19,652 | 1 | 19,652 | 18,316 | |
| Washington | 13,488 | 1 | 13,488 | 24,480 | |
| Watauga | 17,529 | 1 | 17,529 | 20,439 | |
| Wayne | 82,059 | 1 | 82,059 | | 44,091 |
| Wilkes | 45,269 | 1 | 45,269 | | 7,301 |
| Wilson | 57,716 | 1 | 57,716 | | 19,748 |
| Yadkin | 22,804 | 1 | 22,804 | 15,164 | |
| Yancey | 14,008 | 1 | 14,008 | 23,960 | |

## STATE SENATORIAL DISTRICTS – 36 WITH 50 SENATORS

District Senatorial Data:

Proportional Representation Per Senator =
$$\frac{4,556,155}{50} = 91,123$$

Minimum Controlling Percentage – 47.1
Population Variance Ratio – 2.3 to 1

| District | Population of District | Percent of State's Population | Underage for Apportioned Representation | Overage for Apportioned Representation | Number of Senators | Population per Apportioned Senator | Population Change Needed for Equal Senatorial Representation | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Shortage | Excess |
| No. 1 | 67,990 | 1.492 | 58,570 | | 1 | 67,990 | 23,133 | |
| 2 | 65,722 | 1.442 | 60,838 | | 1 | 65,722 | 25,401 | |
| 3 | 73,879 | 1.622 | 52,681 | | 1 | 73,879 | 17,244 | |
| 4 | 82,706 | 1.815 | 43,854 | | 1 | 82,706 | 8,417 | |
| 5 | 165,844 | 3.640 | | 39,284 | 2 | 82,922 | 8,201 | |
| 6 | 86,683 | 1.903 | 39,877 | | 1 | 86,683 | 4,440 | |
| 7 | 81,365 | 1.786 | 45,195 | | 1 | 81,365 | 9,758 | |
| 8 | 78,608 | 1.725 | 47,952 | | 1 | 78,608 | 12,515 | |
| 9 | 98,132 | 2.154 | 28,428 | | 1 | 98,132 | | 7,009 |
| 10 | 178,533 | 3.919 | | 51,973 | 2 | 89,266 | 1,857 | |
| 11 | 82,059 | 1.801 | 44,501 | | 1 | 82,059 | 9,064 | |
| 12 | 181,654 | 3.987 | | 55,094 | 2 | 90,827 | 296 | |
| 13 | 93,867 | 2.060 | 32,693 | | 1 | 93,867 | | 2,744 |
| 14 | 89,102 | 1.956 | 37,458 | | 1 | 89,102 | 2,021 | |
| 15 | 148,418 | 3.258 | | 21,858 | 1 | 148,418 | | 57,295 |
| 16 | 195,867 | 4.299 | | 69,307 | 2 | 97,934 | | 6,811 |
| 17 | 181,359 | 3.981 | | 54,799 | 2 | 90,680 | 443 | |
| 18 | 189,383 | 4.157 | | 62,823 | 2 | 94,692 | | 3,569 |
| 19 | 85,674 | 1.880 | 40,886 | | 1 | 85,674 | 5,449 | |
| 20 | 89,541 | 1.965 | 37,019 | | 1 | 89,541 | 1,582 | |
| 21 | 246,520 | 5.411 | | 119,960 | 2 | 123,260 | | 32,137 |
| 22 | 162,286 | 3.562 | | 35,726 | 2 | 81,143 | 9,980 | |
| 23 | 189,428 | 4.158 | | 62,868 | 2 | 94,714 | | 3,591 |
| 24 | 178,642 | 3.921 | | 52,082 | 2 | 89,321 | 1,802 | |
| 25 | 272,111 | 5.972 | | 145,551 | 3 | 90,704 | 419 | |
| 26 | 82,817 | 1.818 | 43,743 | | 1 | 82,817 | 8,306 | |
| 27 | 79,254 | 1.739 | 47,306 | | 1 | 79,254 | 11,869 | |
| 28 | 98,021 | 2.151 | 28,539 | | 1 | 98,021 | | 6,898 |
| 29 | 97,611 | 2.142 | 28,949 | | 1 | 97,611 | | 6,488 |
| 30 | 127,074 | 2.789 | | 514 | 1 | 127,074 | | 35,951 |
| 31 | 183,678 | 4.031 | | 57,118 | 2 | 91,839 | | 716 |
| 32 | 102,253 | 2.244 | 24,307 | | 1 | 102,253 | | 11,130 |
| 33 | 92,649 | 2.033 | 33,911 | | 1 | 92,649 | | 1,526 |
| 34 | 71,873 | 1.577 | 54,687 | | 1 | 71,873 | 19,250 | |
| 35 | 186,157 | 4.086 | | 59,597 | 2 | 93,078 | | 1,955 |
| 36 | 69,395 | 1.523 | 57,165 | | 1 | 69,395 | 21,728 | |