249 F.Supp. 877 (1965)
Renn DRUM, Jr., on Behalf of Himself and All Others Similarly Situated, Plaintiff,
v.
Malcolm B. SEAWELL, Chairman of the North Carolina State Board of Elections, John G. Clark, Mrs. Robert W. Proctor, Hiram H. Ward, and Paul Osborne, Members of the North Carolina State Board of Elections, Defendants,
and
D. S. Swain, Jr., Plaintiff-Intervenor.
No. C-168-WS-65.
United States District Court M. D. North Carolina, Winston-Salem Division.
November 30, 1965.
*878 G. Ray Motsinger, Winston-Salem, N. C., for plaintiff.
T. Wade Bruton, Atty. Gen. of North Carolina, James F. Bullock, Asst. Atty. Gen., Raleigh, N. C., and H. S. Merrell and Thomas L. Young, Rocky Mount, N. C., for defendants.
*879 John A. Wilkinson and James R. Vosburgh, Washington, N. C., for plaintiff-intervenor.
R. Mayne Albright, Raleigh, N. C., Charles F. Lambeth, Jr., Thomasville, N. C., James Mattocks, High Point, N. C., McNeill Smith, Greensboro, N. C., Ralph M. Stockton, Jr., Winston-Salem, N. C., William L. Thorp, Jr., Rocky Mount, N. C., and Joseph W. Grier, Jr., Charlotte, N. C., for North Carolina Chapter American Civil Liberties Union, amicus curiae.
Before J. SPENCER BELL, Circuit Judge, and EDWIN M. STANLEY and ALGERNON L. BUTLER, District Judges.
J. SPENCER BELL, Circuit Judge:
This action is brought by the plaintiff, Renn Drum, Jr., a citizen of North Carolina and a registered voter, on behalf of himself and others similarly situated against the Chairman and members of the North Carolina Board of Elections. He alleges invidious discrimination against himself and others so situated in the manner in which the State has been apportioned for the election of members of the two Houses of the State Legislature and of the United States House of Representatives. The action seeks a declaratory judgment holding Article II, Sections 5 and 6, of the North Carolina Constitution and the Acts apportioning the State to be unconstitutional and an injunction forbidding further elections until the Legislature shall properly apportion and if the Legislature fails properly to apportion within a specified time, that the court then do so itself. During the pendency of the action, D. S. Swain, Jr., moved for leave to file a complaint in intervention for the purpose of seeking an injunction against the holding of a special primary and election to fill a vacancy existing in the First Congressional District. The intervention was allowed.
The parties to the action have stipulated the facts with respect to the geographical areas, the population and the representation of each of the districts and counties into which the State is divided for the purposes of electing State Senators and Representatives and United States Representatives. The court finds the facts to be as stipulated with respect to these statistics and data, copies of which are appended.
The defendants concede that the complaint states a cause of action. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); 42 U.S.C. §§ 1983 and 1988; U.S.Const. Amend. XIV. Jurisdiction is vested in this court under 28 U.S.C. § 1343(3) and the declaratory judgment act, 28 U.S.C. § 2201.
In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court laid down guide lines to assist the lower courts in implementing the constitutional guaranties of suffrage. The Equal Protection Clause requires substantially equal representation for all citizens in a state in each of the two Houses of a state bicameral Legislature. This right may not be debased by weighing votes differently according to where a citizen happens to reside. Representation in state legislative bodies must be, as nearly as practicable, apportioned on districts of equal population though mechanical exactness is not required. Political subdivisions may be recognized but not at the cost of substantial equality among the several districts. Considerations of history, economic or other group interests or area alone do not justify substantial deviations from the equal population concept. Nor will the presence of large numbers of military and military related personnel justify the under-representation of an area. "Discrimination against a class of individuals, merely because of the nature of their employment, without more being shown, is constitutionally impermissible." Davis v. Mann, 377 U.S. 678, 691, 84 S.Ct. 1441, 1448, 12 L.Ed.2d 609 (1964).
The court, while rejecting a rigid application of a mathematical formula, has laid down two statistical tests in evaluating the State's "honest and good faith *880 effort to construct districts, * * * as nearly of equal population as is practicable." First, the minimum controling percentage; i. e., the percentage of the State's population which resides in the least populous districts which can elect a majority of each House; and second, the population variance ratio; i. e., the ratio between the most populous district and the least populous district of the State.
We turn to the congressional districting of the State. There are eleven districts and the proportional representation per district is 414,196 persons. We note that six of the eleven districts vary from the average by more than 10 per cent; four by more than 15 per cent, and only two districts are within 5 per cent of the average. The smallest district in population (the first) contains 136,335 less than the average while the largest (the eighth) contains 77,265 more than the average. No valid explanation is offered to justify these glaring discrepancies, if indeed they could be justified. We agree with the statement in the Amicus brief that the minimum controlling percentage is not significant. We are concerned with the population variance ratio of 1.8 to 1. Such a variance cannot be justified. In Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), the Court said:
"We hold that, construed in its historical context, the command of Art. I, § 2, that Representatives be chosen `by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's."
Because of the unconstitutionally discriminatory apportionment embodied therein, we hold the statute (N.C.G.S. § 163-103) creating the several districts for the purpose of selecting representatives to the Congress of the United States to be null and void.
The Constitution of North Carolina (Art. II, §§ 5 and 6) provides that the House of Representatives shall consist of 120 members and that each of the State's counties shall have at least one representative "although it may not contain the requisite ratio of representation." The remaining 20 are to be divided among the more populous counties. The House is now apportioned in accordance with this requirement. The proportional representation in the House is one member per 37,968 persons. The member from Wayne County has 82,059 constitutents and the member from Tyrrell 4,520. A population variance of 18.2 to 1. Sixty-one of the least populous counties having a population of 1,234,325 can elect a majority of the House. Thus the minimum controlling percentage is 27.1%. These variances are too great to be acceptable. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Lucas v. Forty-Fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Harris v. Anderson, 194 Kan. 302, 400 P.2d 25, cert. denied, 382 U.S. 894, 86 S.Ct. 185, 15 L.Ed.2d 150. We cannot accept the State's argument that this formula has been in the Constitution since 1836 and that the State re-entered the Union with the formula in effect. Reynolds v. Sims, supra. We note, however, that when the formula originally took effect the State had 65 counties, leaving 55 memberships in the House to be apportioned. Today with 100 counties only 1/6 of the House remains to be apportioned among the most populous counties. North Carolina has no provisions for initiative and referendum; its Governor has no veto power, thus the people of the State have no practical means by which to rectify an imbalance of representation in one of the most powerful legislative bodies in America.
We hold that the provisions of the State Constitution requiring that each county be afforded at least one Representative regardless of its population and the implementing statute (N.C.G.S. § 120-2) to be in violation of the Equal Protection provisions of the Fourteenth Amendment and therefore null and void.
*881 The North Carolina Constitution, Article II, Section 4, requires the General Assembly to alter the senatorial districts after the return of every census so that each district, as nearly as may be, shall have an equal number of inhabitants. Pursuant to this mandate, the 1963 Act (N.C.G.S. § 120-1) apportioned the fifty Senators among 36 districts of the State. An examination of the evidence shows that each of the fifty Senators should ideally represent 91,123 persons; that the smallest district in terms of population contains 65,722 persons and the three largest, respectively, 123,260, 127,074, and 148,418. We note that the minimum controlling percentage is 47.1 and the population variance ratio 2.3 to 1.
We note that every one of the counties in the five most overrepresented senatorial districts is also overrepresented in the House and that the seven most over-represented counties in the House are included in the three most overrepresented senatorial districts.
While we note that the apportionment of the Senate is far more nearly equitable than that of the House, we may not validate either body in the abstract since it must be considered in relation to the other branch of the legislative body as it is finally apportioned.
"* * * the proper, and indeed indispensable subject for judicial focus in a legislative apportionment controversy is the overall representation accorded to the State's voters, in both houses of a bicameral state legislature." Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 673, 84 S.Ct. 1429, 1439, 12 L.Ed.2d 595 (1964).
We hold that the apportionment of the Senate as it now exists is not sufficiently grounded on population to be constitutionally sustainable. N.C.G.S. § 120-1 is therefore held to be null and void. Lucas v. Fourth General Assembly of State of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964). Counsel for the State has urged this court to furnish in its opinion as much guidance as possible to the Legislature, should we find it necessary to require reapportionment. In conformity with this request we point out that the variance ratio between the three highest districts and the remainder of the State is on its face unjustifiable in the light of the fact that the remainder of the State could be apportioned on a population variance of only 1.3 to 1. The obligation of the State is to apportion as nearly equally as possible on a population based representation, and even minor deviations must be free from any taint of arbitrariness or discrimination. Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964).
The plaintiff having proven his charge of discrimination on the basis of population by evidence to which the parties have stipulated, the burden was placed upon the defendants to justify the variations from this standard which were shown to exist. The defendants have failed to meet this burden and we are forced to the conclusion that the plaintiff and those in his class are entitled to relief. Mann v. Davis, 213 F.Supp. 577, 584 (E.D.Va.1962). We will enter a judgment declaring the invalidity of the pertinent State constitutional and statutory provisions.
We cannot allow the regularly scheduled 1966 primaries and elections to proceed under laws now held to be invalid. We recognize, however, that it is fit and proper that the Legislature of this State should be given an opportunity to rectify the inequities which exist before this court should undertake to do so. Ample time now exists before the primary scheduled for May 28, 1966, for the Governor to call a special session of the Legislature. We will, therefore, stay the mandate of our injunction until January 31, 1966, in order that such a session may be convened. If apportionment compatible to constitutional standards cannot be achieved by that date this court will regretfully undertake to fashion a scheme of apportionment which will permit the 1966 primaries and elections to proceed on a just and equitable basis. We think that the right of the people of the First Congressional District to be represented *882 in the Congress during the interval which must intervene while adequate consideration is given to a statewide reapportionment of our Congressional representation requires us to decline to interfere with the special election which has been called to fill the vacancy in that District.
Jurisdiction in this matter is retained.
An order will be entered in accordance herewith.

 APPENDIX TO OPINION
 CONGRESSIONAL DISTRICTS  11
Proportional Representation Per District =
 4,556,155 Minimum Controlling Percentage - 48.6
 --------- = 414,196 Population Variance Ratio - 1.8 to 1
 11
 Percent of Population Population
 Population State's Shortage for Excess for Percent of
 in Total Apportioned Apportioned Over or Under
District District Population Representation Representation Representation
 No. 1 277,861 6.099 136,335 + 32.9
 No. 2 350,135 7.685 64,061 + 15.5
 No. 3 430,360 9.446 16,164 - 3.9
 No. 4 460,795 10.114 46,599 - 11.3
 No. 5 454,261 9.970 40,065 - 9.7
 No. 6 487,159 10.692 72,963 - 17.6
 No. 7 448,933 9.853 34,737 - 8.4
 No. 8 491,461 10.787 77,265 - 18.7
 No. 9 404,093 8.869 10,103 + 2.4
 No. 10 390,020 8.560 24,176 + 5.8
 No. 11 361,077 7.925 53,119 + 12.8
 HOUSE OF REPRESENTATIVES - 100 COUNTIES WITH 120
 MEMBERS
Proportional Representation Per Member =
 4,556.155 Minimum Controlling Percentage - 27.1
 --------- = 37,968 Population Variance Ratio - 18.2 to 1
 120
 Number of Population Population Change to
 Representatives Per Apportioned Give Equal Representation
County Population in House Representative Shortage Excess
Alamance 85,674 2 42,837 4,869
Alexander 15,625 1 15,625 22,343
Alleghany 7,734 1 7,734 30,234
Anson 24,962 1 24,962 13,006
Ashe 19,768 1 19,768 18,200
Avery 12,009 1 12,009 25,959
Beaufort 36,014 1 36,014 1,954

*883
 Number of Population Population Change to
 Representatives Per Apportioned Give Equal Representation
County Population in House Representative Shortage Excess
Bertie 24,350 1 24,350 13,618
Bladen 28,881 1 28,881 9,087
Brunswick 20,278 1 20,278 17,690
Buncombe 130,074 2 65,037 27,069
Burke 52,701 1 52,701 14,733
Cabarrus 68,137 1 68,137 30,169
Caldwell 49,552 1 49,552 11,584
Camden 5,598 1 5,598 32,370
Carteret 30,940 1 30,940 7,028
Caswell 19,912 1 19,912 18,056
Catawba 73,191 1 73,191 35,223
Chatham 26,785 1 26,785 11,183
Cherokee 16,335 1 16,335 21,633
Chowan 11,729 1 11,729 26,239
Clay 5,526 1 5,526 32,442
Cleveland 66,048 1 66,048 28,080
Columbus 48,973 1 48,973 11,005
Craven 58,773 1 58,773 20,805
Cumberland 148,418 3 49,473 11,505
Currituck 6,601 1 6,601 31,367
Dare 5,935 1 5,935 32,033
Davidson 79,493 1 79,493 41,525
Davie 16,728 1 16,728 21,240
Duplin 40,270 1 40,270 2,302
Durham 111,995 2 55,998 18,030
Edgecombe 54,226 1 54,226 16,258
Forsyth 189,428 3 63,143 25,175
Franklin 28,755 1 28,755 9,213
Gaston 127,074 2 63,537 25,569
Gates 9,254 1 9,254 28,714
Graham 6,432 1 6,432 31,536
Granville 33,110 1 33,110 4,858
Greene 16,741 1 16,741 21,227
Guilford 246,520 4 61,630 23,662
Halifax 58,956 1 58,956 20,988
Harnett 48,236 1 48,236 10,268
Haywood 39,711 1 39,711 1,743
Henderson 36,163 1 36,163 1,805
Hertford 22,718 1 22,718 15,250
Hoke 16,356 1 16,356 21,612
Hyde 5,765 1 5,765 32,203
Iredell 62,526 1 62,526 24,558
Jackson 17,780 1 17,780 20,188
Johnston 62,936 1 62,936 24,968
Jones 11,005 1 11,005 26,963
Lee 26,561 1 26,561 11,407
Lenoir 55,276 1 55,276 17,308
Lincoln 28,814 1 28,814 9,154

*884
 Number of Population Population Change to
 Representatives Per Apportioned Give Equal Representation
County Population in House Representative Shortage Excess
McDowell 26,742 1 26,742 11,226
Macon 14,935 1 14,935 23,033
Madison 17,217 1 17,217 20,751
Martin 27,139 1 27,139 10,829
Mecklenburg 272,111 5 54,422 16,454
Mitchell 13,906 1 13,906 24,062
Montgomery 18,408 1 18,408 19,560
Moore 36,733 1 36,733 1,235
Nash 61,002 1 61,002 23,034
New Hanover 71,742 1 71,742 33,774
Northampton 26,811 1 26,811 11,157
Onslow 82,706 2 41,353 3,385
Orange 42,970 1 42,970 5,002
Pamlico 9,850 1 9,850 28,118
Pasquotank 25,630 1 25,630 12,338
Pender 18,508 1 18,508 19,460
Perquimans 9,178 1 9,178 28,790
Person 26,394 1 26,394 11,574
Pitt 69,942 1 69,942 31,974
Polk 11,395 1 11,395 26,573
Randolph 61,497 1 61,497 23,529
Richmond 39,202 1 39,202 1,234
Robeson 89,102 2 44,551 6,583
Rockingham 69,629 1 69,629 31,661
Rowan 82,817 2 41,408 3,440
Rutherford 45,091 1 45,091 7,123
Sampson 48,013 1 48,013 10,045
Scotland 25,183 1 25,183 12,785
Stanly 40,873 1 40,873 2,905
Stokes 22,314 1 22,314 15,654
Surry 48,205 1 48,205 10,237
Swain 8,387 1 8,387 29,581
Transylvania 16,372 1 16,372 21,596
Tyrrell 4,520 1 4,520 33,448
Union 44,670 1 44,670 6,702
Vance 32,002 1 32,002 5,966
Wake 169,082 3 56,361 18,393
Warren 19,652 1 19,652 18,316
Washington 13,488 1 13,488 24,480
Watauga 17,529 1 17,529 20,439
Wayne 82,059 1 82,059 44,091
Wilkes 45,269 1 45,269 7,301
Wilson 57,716 1 57,716 19,748
Yadkin 22,804 1 22,804 15,164
Yancey 14,008 1 14,008 23,960

*885 STATE SENATORIAL DISTRICTS - 36 WITH 50 SENATORS
District Senatorial Data:
Proportional Representation Per Senator =
 4,556,155 Minimum Controlling Percentage - 47.1
 --------- = 91,123 Population Variance Ratio - 2.3 to 1
 50

 Population Change
 Needed for
 Population Percent of Underage for Overage for Number Population per Equal Senatorial
 of State's Apportioned Apportioned of Apportioned Representation
 District District Population Representation Representation Senators Senator Shortage Excess
----------------------------------------------------------------------------------------------------------------------
No. 1 67,990 1.492 58,570 1 67,990 23,133
 2 65,722 1.442 60,838 1 65,722 25,401
 3 73,879 1.622 52,681 1 73,879 17,244
 4 82,706 1.815 43,854 1 82,706 8,417
 5 165,844 3.640 39,284 2 82,922 8,201
 6 86,683 1.903 39,877 1 86,683 4,440
 7 81,365 1.786 45,195 1 81,365 9,758
 8 78,608 1.725 47,952 1 78,608 12,515
 9 98,132 2.154 28,428 1 98,132 7,009
 10 178,533 3.919 51,973 2 89,266 1,857
 11 82,059 1.801 44,501 1 82,059 9,064
 12 181,654 3.987 55,094 2 90,827 296
 13 93,867 2.060 32,693 1 93,867 2,744
 14 89,102 1.956 37,458 1 89,102 2,021
 15 148,418 3.258 21,858 1 148,418 57,295
 16 195,867 4.299 69,307 2 97,934 6,811
 17 181,359 3.981 54,799 2 90,680 443
 18 189,383 4.157 62,823 2 94,692 3,569
 19 85,674 1.880 40,886 1 85,674 5,449
 20 89,541 1.965 37,019 1 89,541 1,582
 21 246,520 5.411 119,960 2 123,260 32,137
 22 162,286 3.562 35,726 2 81,143 9,980
 23 189,428 4.158 62,868 2 94,714 3,591
 24 178,642 3.921 52,082 2 89,321 1,802
 25 272,111 5.972 145,551 3 90,704 419
 26 82,817 1.818 43,743 1 82,817 8,306
 27 79,254 1.739 47,306 1 79,254 11,869
 28 98,021 2.151 28,539 1 98,021 6,898
 29 97,611 2.142 28,949 1 97,611 6,488
 30 127,074 2.789 514 1 127,074 35,951
 31 183,678 4.031 57,118 2 91,839 716
 32 102,253 2.244 24,307 1 102,253 11,130
 33 92,649 2.033 33,911 1 92,649 1,526
 34 71,873 1.577 54,687 1 71,873 19,250
 35 186,157 4.086 59,597 2 93,078 1,955
 36 69,395 1.523 57,165 1 69,395 21,728