Renn DRUM, Jr., on Behalf of Himself et al. Similarly Situated, Plaintiff,

v.

Malcolm B. SEAWELL, Chairman of the North Carolina State Board of Elections, John G. Clark, Mrs. Robert W. Proctor, Hiram H. Ward, and Paul Osborne, Members of the North Carolina State Board of Elections, Defendants.

No. C–168–WS–65.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Feb. 18, 1966.

3

323

G. Ray Motsinger, Winston-Salem, N. C., for plaintiff.

T. Wade Bruton, Atty. Gen. of North Carolina, James F. Bullock, Asst. Atty. Gen., Raleigh, N. C., and H. S. Merrell and Thomas L. Young, Rocky Mount, N. C., for defendants.

R. Mayne Albright, Raleigh, N. C., Charles F. Lambeth, Jr., Thomasville, N. C., James Mattocks, High Point, N. C., McNeill Smith, Greensboro, N. C., Ralph M. Stockton, Jr., Winston-Salem, N. C., William L. Thorp, Jr., Rocky Mount, N. C., and Joseph W. Grier, Jr., Charlotte, N. C., for North Carolina Chapter American Civil Liberties Union, amicus curiae.

Before J. SPENCER BELL, Circuit Judge, and STANLEY and BUTLER, District Judges.

J. SPENCER BELL, Circuit Judge:

On November 30, 1965, this court entered an interlocutory Order holding that the apportionment of the State for the election of members of the State Legislature and representatives to the Congress was unconstitutionally discriminatory and therefore void. Further elections were enjoined, but the court's mandate was stayed in order that the State might act.

Subsequent to the date of the court's order, the General Assembly of North Carolina met in special session and reapportioned the State. We commend the Legislature and its leaders for the expeditious and efficient manner in which they have sought to accomplish a very burdensome and complex task.

Counsel for the defendants move that this action be dismissed on the grounds that the State is now properly apportioned.

On February 1, 1966, three days before the scheduled hearing on the State's motion to dismiss, several petitioners,[1] residents and taxpayers of North Carolina,

1. Jesse H. Austin, Jr., Norman C. Denning, Joseph Grimes, Mrs. Ruth Shaw, David Bradley, Mrs. James Prothro, Hugh M. Wilson, Robert S. Metzer and David I. Fort.

petitioned to intervene to oppose the State's motion. Because of the urgency of time, with the consent of counsel for all parties, we have in the exercise of our discretion denied the petitioners the right of formal intervention. We have, however, accepted their brief and have heard their counsel in oral argument.

■■ We have examined the acts by which the Legislature has reapportioned the membership of the two houses. We hold that these acts meet the minimum federal constitutional standards.[2] The apportionment of the Senate results in a minimum controlling percentage of 48.80 per cent and a population variance ratio of 1.32 to 1. The minimum controlling percentage for the House of Representatives is 47.54 per cent and the population variance ratio is 1.33 to 1. The disparities in population reflected by these figures are not so extreme as to violate constitutional requirements, taking the peculiar interests of the State and its geographic composition into consideration.

■■ Within the limitations imposed by county lines, the districts for both the State House and Senate appear to be reasonably compact. In a number of instances, slight over-representation in one house is balanced by under-representation in the other, though this is regrettably not true with respect to the eleven counties lying in the northeast corner of the State and with respect to Guilford, Halifax, and Watauga counties. While these latter deviations and disparities render the apportionment scheme of the two houses, considered as a whole, "constitutionally suspect", we cannot say that they constitute invidious discrimination. Lucas v. Forty-Fourth Colorado Gen. Assembly, 377 U.S. 713 n. 27, 84 S.Ct.

1459, 12 L.Ed.2d 632 (1964). We assume that when the houses of the Legislature are reapportioned following the 1970 decennial census the last vestige of unequal representation will be removed. We point out again that any deviation from a strict population basis in one house of the Legislature should be compensated for in the other house to the end that "as nearly as practicable" one man's vote will "be worth as much as another's." Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

■ We cannot, however, hold that the Congressional redistricting plan fulfills the constitutional requirement that the districts be of " * * * as nearly * * * equal population as is practicable." Reynolds v. Sims, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (1963). As is further pointed out in *Reynolds,* stricter adherence to equality of population between districts may more logically be required in congressional than in state legislative representation. While rigid mathematical standards are not the sine qua non of constitutional validity, practical and rational equality is required. Such equality recognizes only minor deviations which may occur in the recognition of rational and legitimate factors, free from the taint of arbitrariness, irrationality and discrimination. Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964). The over-emphasis on factors other than population has created excessive deviation from the standard thus required. Any deviation from that standard must be rationally justified. The greater the disparity, of course, the greater is the burden.

■■ The conceded rationale[3] of the Legislature to protect incumbent con-

**2.** The Senate has been reapportioned into multi-member districts consisting of one-, two-, and three-member districts, ranging in total population from 79,373 to 308-017. Article 2, Section 4, of the North Carolina Constitution, provides that "each Senate *district* shall contain, as nearly as may be, an equal number of inhabitants * * *" [Emphasis supplied.] Plaintiff makes no claim that the

Act violates the State constitution. Whether the Senate plan violates the North Carolina Constitution is a matter primarily for the state court; it is not before us in this case. See Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965).

**3.** Prior to the convening of the extra session of the General Assembly, the

gressmen by placing them in different districts and by changing the existing districts as little as necessary to bring the plan within presumed minimum acceptable mathematical percentages causes us to conclude that the plan does not come "as nearly as practicable to equal population." The greater population variations which were created by the Legislature in the first, third and seventh districts by their deviation from the plan as originally submitted by the select committee [4] is further indicative of overemphasis of these factors. It is not necessary to a decision of this case to determine whether a motive to retain incumbent congressmen is a legitimate consideration in redistricting. We simply hold that it may not predominate over the requirements of practicable equality, and we think that compactness and contiguity are aspects of practicable equality.

■ The tortuous lines which delineate the boundaries of many of the congressional districts under the proposed plan, the resulting lack of compactness and contiguity, and the failure to achieve equal representation for equal numbers of people as nearly as practicable compels us to hold that the congressional apportionment is constitutionally invalid.[5]

■ While we feel bound to reject the plan, we nevertheless recognize the good faith effort of the Legislature to bridge the tremendous gulf which existed between the status quo and the constitutional requirements. We also recognize the obligation of the federal courts to defer to the prerogative of the legislative branch of the State in this field. Recognizing also the imminence of the 1966 primaries, we, in the exercise of our equitable discretion, will stay our mandate further and permit the congressional elections of 1966 to take place under the laws passed by the special session. We will, however, retain jurisdiction of the case, to assure that no further congressional elections will be held under the plan which does not fully meet constitutional requirements in order to give the reapportioned Legislature of 1967 an opportunity to reconsider the matter. Reynolds v. Sims, 377 U.S. 533, 586–587, 84 S.Ct. 1362.

Jurisdiction of this matter is retained.

An order will be entered in accordance herewith.

---

Speaker of the House of Representatives and the President of the Senate appointed a Joint Select Committee composed of 24 members from each body to draft a plan of congressional redistricting and reapportionment. One of the Committee's criteria to be followed in formulating its plan is as follows:

"It has been the Committee's firm resolve to avoid the placing of incumbents in the same new district if at all compatible with the equal population objective."

4. The Committee's plan, while lacking in compactness of territory and contiguity, achieved a population variance ratio of 1.10 to 1. The deviations from the ideal of 414,196 persons per congressman range from minus 3.50 per cent to plus 6.15 per cent, and the average deviation for all districts is 1.96 per cent. The difference between the population of the largest and smallest district is 39,954.

The General Assembly adopted the Committee's plan after making two changes which did not affect its "firm resolve" to avoid the placing of any two incumbents in the same district. The plan as adopted which is submitted to this court for approval effects a population variance ratio of 1.19 to 1; a deviation of persons per congressman ranging from minus 8.91 per cent to plus 8.39 per cent; and average deviation for all districts of 3.46 per cent, and a population difference between the largest and smallest district of 71,640.

5. Commenting on congressional apportionment in Alabama, the Supreme Court said: "Furthermore, the existing apportionment, and also to a lesser extent the apportionment under the Crawford-Webb Act, presented little more than crazy quilts, completely lacking in rationality, and could be found invalid on that basis alone." Reynolds v. Sims, 377 U.S. 533, 568, 84 S.Ct. 1362, 1385.