Renn DRUM, Jr., on Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

Malcolm B. SEAWELL, Chairman of the North Carolina State Board of Elections, John G. Clark, Mrs. Robert W. Proctor, Hiram H. Ward, and Paul Osborne, Members of the North Carolina State Board of Elections, Defendants,

and

D. S. Swain, Jr., Plaintiff-Intervenor.

No. C–168–WS–65.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

July 27, 1967.

G. Ray Motsinger, Winston-Salem, N. C., for plaintiff.

T. Wade Bruton, Atty. Gen. of North Carolina, James F. Bullock, Asst. Atty. Gen., Raleigh, N. C., and H. S. Merrell and Thomas L. Young, Rocky Mount, N. C., for defendants.

John A. Wilkinson and James R. Vosburgh, Washington, N. C., for plaintiff-intervenor.

Before CRAVEN, Circuit Judge, and STANLEY and BUTLER, District Judges.

EDWIN M. STANLEY, District Judge.

When this matter was first before the Court,[1] an interlocutory order was entered holding that the apportionment of the State for the election of members of the State Legislature and Representatives to the Congress of the United States was unconstitutionally discriminatory, and further elections were enjoined. However, the Court's mandate was stayed in order to give the State an opportunity to act.

Following reapportionment by a Special Session of the General Assembly of North Carolina, another interlocutory order was entered holding that the reapportionment of the membership of the two houses of the State Legislature met the minimum Federal constitutional standards, but that the act of the General Assembly in redistricting the State for the election of Representatives to the Congress of the United States was constitutionally invalid.[2] However, by reason of special circumstances, the mandate of the Court with respect to congressional redistricting was again stayed in order to give the regular 1967 session of the General Assembly an opportunity to act, but not later than July 1, 1967, when the case might be reopened, either upon the Court's own motion or upon application of any party to the action. For this purpose, jurisdiction was retained.

On July 11, 1967, the defendants filed a motion to dismiss the action on the ground that the General Assembly of North Carolina, on July 4, 1967, reapportioned the congressional districts in such a manner as to achieve equal representation for equal numbers of people as nearly as practicable, thus meeting constitutional standards. The plaintiff, in a written response to the defendant's motion to dismiss, states that he does not oppose the motion, or object to the entry of an order dismissing the action.

On November 23, 1965, D. S. Swain, Jr., sought leave to intervene in the action for the purpose of seeking an injunction against the holding of a special election in the First Congressional District of North Carolina until after congressional districts had been reapportion-

1. Drum v. Seawell, 249 F.Supp. 877 (D. C.1965).

2. Drum v. Seawell, 250 F.Supp. 922 (D.C. 1966).

ed in accordance with constitutional standards. The motion to intervene was allowed, but we declined to interfere with the special election. Drum v. Seawell, 249 F.Supp. 877 (D.C. 1965). On July 3, 1967, the intervenor moved that the Court take jurisdiction and reapportion the congressional districts of North Carolina for the reason that the General Assembly of North Carolina had failed to act by July 1, 1967. On July 10, 1967, the intervenor further moved that the action taken by the General Assembly on July 4, 1967, reapportioning the congressional districts, be disregarded by the Court for the reason that action was not taken by July 1, 1967, as previously ordered by the Court, and the further reason that some of the newly created congressional districts did not meet the standards prescribed by this Court. This latter assertion is based principally upon the contention that some of the districts were gerrymandered for political purposes.

■ In our order of February 18, 1966, we clearly intended to stay our mandate and retain jurisdiction for the purpose of giving the 1967 Legislature an opportunity to reconsider the matter of congressional redistricting. Since it was anticipated that the regular session of the Legislature would adjourn before July 1, 1967, this date was inserted to insure that a constitutionally acceptable plan would be promulgated, either by the Legislature or by this Court, well in advance of the 1968 primaries. The fact that the Legislature remained in session for a longer period than anticipated, and did not reach a final agreement on congressional redistricting before July 4, 1967, is of no consequence, and its final enactment should be considered, and given the same weight and effect, as if final action had been taken before July 1, 1967.

■■ We have carefully examined the Act of the 1967 session of the Legislature reapportioning congressional districts, and hold that the minimum Fed-

eral constitutional standards have now been met. "Appendix A" is a map showing pertinent data with respect to each district. It will be observed that the population variance ratio is 1.04 to 1, the average deviation for all districts is 1.06%, the deviation of persons per congressman range from minus 1.86% to plus 2.31%, and that the population difference between the largest and smallest district is 17,276. Within the limitations imposed by county lines, we cannot say that these disparities in population constitute invidious discrimination.

■ Regretfully, we note that tortuous lines still delineate the boundaries of some of the districts, particularly the Ninth and Tenth Districts. As we previously observed with respect to the two houses of the State Legislature, we assume that when congressional districts are reapportioned following the 1970 decennial census, each congressional district will be so drawn as to not only achieve equal representation for equal numbers of people as nearly as practicable but will also be reasonably compact.

An order will be entered dismissing the action.

CRAVEN, Circuit Judge (concurring).

The constitutional standard enunciated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), is to legislative reapportionment what a hurdle is to a steeple chase: a minimum standard that must be cleared. *How* to clear it, so long as there is not gerrymandering for an invidious purpose, and by what optimum margin, are matters within the competence of the General Assembly. The court correctly decides that the plan of reapportionment adopted by the General Assembly of North Carolina is not in violation of the Constitution of the United States.

Since we do not sit to give advisory opinions, I would stop at that point, and neither deplore what has been done nor assume that something "better" lies ahead.

196

CONGRESSIONAL DISTRICTS 1967 —

Session Laws 1967, c. 1109 (S. B. 69)

North Carolina

EXHIBIT A-4-67